10-2074-cv
M.F., B.C. v. N.Y. Exec. Dep't Div. of Parole

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2010

(Argued: March 10, 2011     Decided: April 11, 2011)

Docket No. 10-2074-cv

M.F., B.C.,

*Plaintiffs-Appellants*,

— v.—

STATE OF NEW YORK EXECUTIVE DEPARTMENT
DIVISION OF PAROLE,

*Defendant-Appellee*.

B e f o r e:

B.D. PARKER, LIVINGSTON, and LYNCH, *Circuit Judges*.

Plaintiff-appellant M.F. was convicted in New Jersey of endangering the welfare

of children and was placed on probation for five years, to be followed by community

supervision for life, as required by state law.  He asked the New Jersey parole authorities

for permission to move to New York, where he works and where his partner, plaintiff-

appellant B.C., lives.  New Jersey requested New York to assume M.F.'s supervision.

Pursuant to the Interstate Compact for Adult Offender Supervision, New York eventually

agreed to the transfer, provided that M.F. accept certain special conditions, including notifying his employer of his conviction and his lifetime supervised release, and allowing New York's Division of Parole to install monitoring software on his work computer. M.F. refused, and filed suit against the Division, arguing in relevant part that the conditions violated the Interstate Compact because a similar sex offender convicted in New York would not be subject to them. The district court granted summary judgment for the Division. Because we conclude that the Interstate Compact does not create a private right of action, we affirm the judgment of the district court.

AFFIRMED.

---

JEFFREY G. STARK, Meyer, Suozzi, English & Klein, P.C., Garden City, New York, *for Plaintiffs-Appellants*.

RICHARD O. JACKSON, Assistant Solicitor General (Barbara D. Underwood, Solicitor General, Benjamin N. Gutman, Deputy Solicitor General, Raffi Melkonian, Assistant Solicitor General, *on the brief*), *for* ANDREW M. CUOMO, Attorney General of the State of New York, *for Defendant-Appellee*.

---

GERARD E. LYNCH, *Circuit Judge*:

This case requires us to interpret the little-known Interstate Compact for Adult Offender Supervision ("the Compact"), an interstate agreement that permits the transfer of supervision of parolees, probationers, and supervised releasees from one state to another. Plaintiff-appellant M.F. charges that New York violated the Compact by

2

imposing certain conditions on its acceptance of his transfer from New Jersey's supervision. Because we conclude that the Compact does not create a private right of action, we affirm the district court's dismissal of his complaint without reaching the question whether New York's actions violated the Compact.

## BACKGROUND

In 2001, M.F. pleaded guilty in New Jersey Superior Court to one count of endangering the welfare of children by using the Internet to solicit sex from underage individuals. He was sentenced to five years' probation and ordered to forfeit his computer during that period. After his probation ended, moreover, he was subject to "community supervision for life," a mandatory provision of his sentence under state law. That supervision carried with it certain special conditions. Among other things, M.F. was barred from using the Internet without the permission of the New Jersey Parole Unit's district supervisor. If such permission was granted, he was required to allow parole supervisors access to his computers to install monitoring equipment, at their discretion.

In 2006, New Jersey authorized M.F. to "use a computer and access the [I]nternet for work purposes." That same year, M.F. requested permission to relocate from New Jersey to New York City, where he works as a software executive, and where plaintiff-appellant B.C., his registered domestic partner, lives and works. Pursuant to the Compact, the congressionally authorized agreement among states governing the transfer

3

of supervision of adult offenders,[1] New Jersey made a transfer request on M.F.'s behalf, asking New York to accept responsibility for supervising M.F. Defendant-appellee New York Executive Department Division of Parole ("the Division") eventually agreed to the transfer, contingent on M.F.'s accepting a number of special conditions of supervision, including a requirement that M.F. notify his employer of his 2001 conviction and his lifetime supervision, and that he allow New York to monitor his Internet use at home and at work.

Concerned that the notification and monitoring requirements would cause his employer to fire him, M.F. chose not to move to New York. In 2008, he and B.C. sued the Division, arguing, among other things, that the special condition requiring M.F. to notify his employer of his conviction and lifetime supervision violates the Compact because a similar sex offender convicted in New York would not be subject to the same special condition.

The district court (Barbara S. Jones, *Judge*) rejected all of plaintiffs' arguments and granted the Division's motion for summary judgment. M.F. & B.C. v. State of N.Y. Exec. Dep't Div. of Parole, No. 08 Civ. 1504 (S.D.N.Y. Mar. 24, 2010). Insofar as it is

---

[1] The Compact is "a formal agreement between member states that seeks to promote public safety by systematically controlling the interstate movement of certain adult offenders." Introduction, Interstate Commission for Adult Offender Supervision Rules (March 1, 2011) ["ICAOS Rules"], available at http://www.interstatecompact.org (last visited April 7, 2011). The Compact "has congressional consent under Article I, § 10 of the United States Constitution and pursuant to Title 4, Section 112(a) of the United States Code." Id.

4

relevant to this appeal, the court found that the plaintiffs had shown no evidence that an offender convicted in New York and supervised by the Division would have been treated any differently than M.F. The court held that the Division had not violated the Compact, but had rationally "exercised its discretion to impose an employer notification condition to facilitate monitoring of M.F.'s workplace computer." Id. at 8. Accordingly, the district court dismissed the complaint.

On appeal, M.F. and B.C. argue that summary judgment was improper because their complaint alleged "that the conditions of supervision which the defendant . . . seeks to impose upon plaintiff M.F. . . . are not consistent with the supervision of similar offenders sentenced in New York," and because "the defendant offered no evidence, and the district court did not find, to the contrary." Therefore, they contend, a genuine issue of material fact exists. Additionally, at oral argument, appellants raised a new argument that largely contradicts the arguments advanced in their briefs: that the district court lacked jurisdiction to decide the case, and that we should remand the case and instruct the district court to dismiss it without prejudice so that M.F. and B.C. can refile in state court.

The Division argues that the special conditions it sought to impose on M.F. as part of his transfer do not violate the Compact, as they are "entirely permissible and consistent with how New York would treat an in-state sex offender." In addition to defending its actions on the merits, the Division argues, for the first time on appeal, that the Compact does not confer a private right of action, and thus, since M.F. and B.C.'s complaint is based on alleged violations of the Compact, the case "must be rejected at the threshold."

5

Because we agree that the Compact creates no express or implied private right of action, we affirm the judgment of the district court.

## DISCUSSION

## I. **Jurisdiction**

On appeal, appellants contend that the district court lacked jurisdiction to hear this case, and that we should therefore vacate the judgment below and remand the case, directing the district court to dismiss it without prejudice so that M.F. and B.C. can refile in state court.

Appellants' new-found jurisdictional argument is unavailing. As appellants themselves pointed out in their written submissions and acknowledged at oral argument, the complaint clearly presents a federal question: whether the Division violated enforceable rights of the plaintiffs under an interstate compact authorized by Congress under 4 U.S.C. § 112 and by the Compact Clause of the Constitution.[2] Such a compact has the force of federal law. "[A]n interstate compact or agreement becomes federal law if it is a congressionally sanctioned interstate compact within the meaning of the Compact Clause of the Constitution." NYSA-ILA Vacation & Holiday Fund v. Waterfront Comm'n of N.Y., 732 F.2d 292, 297 (2d Cir. 1984); see also Cuyler v. Adams, 449 U.S. 433, 440 (1981) ("[W]here Congress has authorized the States to enter into a cooperative

---

[2] The Compact Clause provides, in pertinent part, that "[n]o State shall, without the Consent of Congress, . . . enter into any Agreement or Compact with another State." U.S. Const. art. I, § 10, cl. 3.

6

agreement, and where the subject matter of that agreement is an appropriate subject for congressional legislation, the consent of Congress transforms the States' agreement into federal law under the Compact Clause."). Furthermore, the Rules governing the Compact explicitly provide for federal judicial enforcement of the Compact in legal actions initiated by the Interstate Commission created by the Compact.[3]

Thus, there can be no question that this case arises under the laws of the United States. See U.S. Const. art. III; 28 U.S.C. § 1331; see also Verlinden B.V. v. Cent. Bank of Nigeria, 461 U.S. 480, 493 (1983) (a suit that "necessarily raises questions of substantive federal law at the very outset . . . clearly 'arises under' federal law, as that term is used in Article III"). The federal question at issue in this case was apparent from M.F. and B.C.'s complaint, which alleged that "[t]he terms and conditions set forth by [the Division] are in direct conflict with [ICAOS] Rule 4.101." Compl. ¶ 18.[4]

---

[3] ICAOS Rule 6.104 provides:

> The Interstate Commission may, by majority vote of the members, initiate legal action in the United States District Court for the District of Columbia or, at the discretion of the Interstate Commission, in the federal district where the Interstate Commission has its offices to enforce compliance with the provisions of the Compact, its duly promulgated rules and by-laws, against any compacting state in default. In the event judicial enforcement is necessary the prevailing party shall be awarded all costs of such litigation including reasonable attorneys' fees.

[4] It is of no consequence that the complaint erroneously alleged diversity jurisdiction where none exists. See Compl. ¶¶ 1-3, 5. We "must liberally construe

7

Accordingly, the district court had jurisdiction over the matter.

## II. **The Compact**

Whether the Compact or its authorizing statute creates a private right of action is a question of first impression in this Circuit. The district court did not decide the issue, and the Division raises it for the first time on appeal. Nevertheless, it is a "well-settled principle[] of law" that "this Court may affirm whenever the record is sufficient to permit its conclusions of law, regardless of whether our reasoning differs from that of the court below." Baker v. Latham Sparrowbush Assocs., 72 F.3d 246, 252 (2d Cir. 1995); see also Ferran v. Town of Nassau, 471 F.3d 363, 365 (2d Cir. 2006). Here, the record is sufficient for us to conclude that no such private right of action exists.

Even assuming arguendo that New York had violated the Compact here, "the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." Cannon v. Univ. of Chicago, 441 U.S. 677, 688 (1979).[5] Federal statutes can create causes of action expressly or impliedly, although "the Supreme Court has come to view the implication of

---

plaintiffs' complaint 'to determine whether the facts set forth justify taking jurisdiction on grounds other than those most artistically pleaded.'" Curley v. Brignoli, Curley & Roberts Assocs., 915 F.2d 81, 84 (2d Cir. 1990), quoting N.Y. State Waterways Ass'n v. Diamond, 469 F.3d 419, 421 (2d Cir. 1972).

[5] Because the Compact has become federal law by reason of congressional action, the principles governing the creation of implied rights of action by statutes apply by analogy to the Compact.

8

private remedies in regulatory statutes with increasing disfavor."  Hallwood Realty

Partners v. Gotham Partners, 286 F.3d 613, 618 (2d Cir. 2002).

Because neither the Compact nor the federal statute that authorizes it contains an

express private right of action, we must determine whether such a right is implicit in

them.  See Cort v. Ash, 422 U.S. 66, 78 (1975).  We consider four factors:

> First, is the plaintiff one of the class for whose especial
> benefit the statute was enacted – that is, does the statute create
> a federal right in favor of the plaintiff?  Second, is there any
> indication of legislative intent, explicit or implicit, either to
> create such a remedy or to deny one?  Third, is it consistent
> with the underlying purposes of the legislative scheme to
> imply such a remedy for the plaintiff?  And finally, is the
> cause of action one traditionally relegated to state law, in an
> area basically the concern of the States, so that it would be
> inappropriate to infer a cause of action based solely on federal
> law?

Lindsay v. Ass'n of Prof'l Flight Attendants, 581 F.3d 47, 52 (2d Cir. 2009), quoting

Cort, 422 U.S. at 78 (internal citations and quotation marks omitted).

Although we focus our "analysis on the single question of whether congressional

intent to create a private cause of action can be found in the relevant statute," Hallwood

Realty Partners, 286 F.3d at 619, we may apply the four Cort factors in order "to

illuminate our analysis of congressional intent," Lindsay, 581 F.3d at 52 n.3.  Absent

evidence of such intent, the Supreme Court has directed that "a cause of action does not

exist and courts may not create one, no matter how desirable that might be as a policy

matter, or how compatible with the statute."  Alexander v. Sandoval, 532 U.S. 275, 286-

9

87 (2001). To find evidence of Congress's implied intent to create a private right of action, we look to the "text and structure" of the statute. Id. at 288.

Nothing in the text or structure of the Compact, or of the federal statute that authorizes it, reveals any intent of Congress or of the compacting states to create private rights or remedies for offenders. The Compact includes a Chapter titled "Dispute Resolution and Interpretation of Rules," which sets out the process for resolving "disputes or controversies" that arise under the Compact. See ICAOS Rules 6.101-6.104. The Chapter provides, inter alia, for the judicial enforcement of the Compact's provisions. See id. at Rule 6.104. However, all of the dispute-resolution mechanisms described in the Compact, including an explicit authorization of federal court action under limited circumstances,[6] concern disputes either between compacting states or between a state and the Interstate Commission. The Compact does not contemplate judicial action to resolve a dispute between an offender and a compacting state. Thus, the Compact's "text and structure" make clear that it is solely an agreement between states, and not a source of private rights of action for the offenders whose interstate movement it governs. See Sandoval, 532 U.S. at 288.[7]

_____

[6] See note 3, supra.

[7] Furthermore, although the Compact "is like a contract to the extent that it is 'a legal document that must be construed and applied in accordance with its terms,'" Doe v. Pennsylvania Bd. of Prob. and Parole, 513 F.3d 95, 105 (3d Cir. 2008), quoting Texas v. New Mexico, 482 U.S. 124, 128 (1987), we conclude, as did the Third Circuit – interpreting the Compact's predecessor compact – that offenders "are not beneficiaries of

Moreover, the four Cort factors militate against finding an implied private right of action in this case. First, M.F. and B.C. are not members "of the class for whose especial benefit the statute was enacted." See Cort, 422 U.S. at 78 (internal quotation marks omitted). The Compact is an agreement among sovereign states. It provides for requests to be made by one state to another, for the convenience of the states themselves. "The language of the Compact itself creates rights for the various states who are signatories to it. It does not create rights for probationers or parolees." Doe v. Pennsylvania Bd. of Prob. and Parole, 513 F.3d 95, 104 (3d Cir. 2008). Second, there is no indication, in the Compact itself or in its authorizing statute, that Congress or the compacting states intended to create a remedy to benefit offenders like M.F. See id. at 104-05. Indeed, the Compact does not even authorize supervisees to request a transfer on their own account. Third, it would not be "consistent with the underlying purposes" of the Compact "to imply such a remedy for the plaintiff," Cort, 422 U.S. at 78, since the purpose of the Compact is to "promote public safety by systematically controlling the interstate movement of certain adult offenders," and not to grant additional rights to those offenders, see Introduction, ICAOS Rules; see also 4 U.S.C. § 112(a). Finally, to the extent that M.F. and B.C. seek to challenge the appropriateness of conditions of

_____

this Compact; they are merely subjects of it," id. at 107. M.F. and B.C. cannot claim rights under the Compact on a contract theory, since "no *explicit* third-party obligation appears in the Compact and there is no compelling evidence that, by entering into the Compact, [New York or New Jersey] implicitly intended to give legally enforceable rights to [M.F. or B.C.]." Id.

11

supervision that the Division has sought to impose on an offender, they are raising issues

"traditionally relegated to state law." Cort, 422 U.S. at 78; see N.Y. C.P.L.R. 7801-7806

(McKinney 2008) (providing for judicial review of agency action).

The federal statute that authorizes the Compact similarly reveals no evidence that

Congress intended to create a private right of action for offenders. The statute provides,

in pertinent part:

> The consent of Congress is hereby given to any two or more
> States to enter into agreements or compacts for cooperative
> effort and mutual assistance in the prevention of crime and in
> the enforcement of their respective criminal laws and policies,
> and to establish such agencies, joint or otherwise, as they may
> deem desirable for making effective such agreements and
> compacts.

4 U.S.C. § 112(a). This statutory language demonstrates no intent on the part of Congress

to create a private right of action. The statute does nothing more than authorize states (1)

to enter into agreements and compacts with each other for purposes of crime prevention,

and (2) to establish agencies to oversee those interstate agreements and compacts. No

"intent to create a private cause of action can be found in" 4 U.S.C. § 112(a) or in the

Interstate Compact. See Hallwood Realty Partners, 286 F.3d at 619.

Where "Congress has manifested no intent to provide a private right of action, we

cannot create one." Lindsay, 581 F.3d at 52. Here, neither Congress nor the compacting

states manifested any such intention. We therefore conclude that the Compact and its

authorizing statute create neither an express nor an implied federal private right of action.

12

Thus, the appellants may not challenge the Division's proposed special conditions on the basis that those conditions violate the Compact.

## CONCLUSION

For the foregoing reasons, the order of the district court is affirmed.