**Supreme Court**

No. 2014-194-C.A.

(K1/95-890A)

State                        :

v.                        :

Harry W. Brown.                        :

NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State                              :

v.                               :

Harry W. Brown.                    :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Goldberg, for the Court.**  The defendant, Harry W. Brown, is before the Supreme Court on appeal from an adjudication by a justice of the Superior Court declaring him to be in violation of the terms and conditions of probation.  The defendant applied for a transfer of his probation supervision from the State of Rhode Island to the Commonwealth of Pennsylvania pursuant to the Interstate Compact for Adult Offender Supervision (ICAOS or Compact), G.L. 1956 chapter 9.1 of title 13.  Pennsylvania accepted the transfer request and imposed additional conditions of supervision upon the defendant, to which the defendant acquiesced.  The defendant ultimately violated the additional conditions.  In this appeal, we are tasked with determining the effect to be given to these violations by this state under the Compact.  For the following reasons, we affirm in part and vacate in part the judgment of the Superior Court.

### Facts and Travel

In 1996, defendant entered a plea of nolo contendere to all counts of a twenty-seven-count indictment that charged him with first-degree child molestation sexual assault, second-degree child molestation sexual assault, first-degree sexual assault, second-degree sexual assault,

and assault with intent to commit first-degree sexual assault upon more than one victim. In total, the trial justice[1] sentenced defendant to forty-five years at the Adult Correctional Institutions (ACI), twenty years to serve and twenty-five years suspended with probation. The trial justice also ordered that defendant would be required to obtain sex-offender counseling, register as a sex offender, and refrain from contact with the victims.

The defendant was released from the ACI on parole on November 16, 2005. Pennsylvania began supervising his parole two days later. In December 2008, defendant signed a document entitled "Special Conditions of Parole" prepared by the Commonwealth of Pennsylvania Board of Probation and Parole; defendant agreed to abide by the following special condition of parole:

> "I shall refrain from using any computer and/or device to create any social networking profile or to access any social networking service or chat room (including but not limited to MySpace.com, Facebook, Match.com, Yahoo Messenger/Yahoo 360, AOL/AOL Instant Messenger, and any online dating service) in my own name or any other name for any reason unless expressly authorized by the District Parole Supervisor."

On October 20, 2011, presumably at the conclusion of his parole term, defendant signed a document entitled "Rhode Island Department of Corrections Adult Probation and Parole Conditions of Supervised Probation" (Rhode Island Conditions of Supervised Probation) in which he acknowledged, "I must obey the * * * [c]onditions [set forth in the document] throughout the term of my [p]robation."[2] He also acknowledged that: "Failure to follow each

---

[1] To distinguish between the two Superior Court justices who presided over the relevant proceedings in this case, we refer to the justice who accepted defendant's plea and sentenced him as "the trial justice" and the justice who adjudicated defendant to be a probation violator as "the hearing justice."

[2] The document listed the following conditions: (1) "[o]bey all laws"; (2) "[r]eport to the Probation Officer as directed"; (3) "[r]emain within the State of Rhode Island, except with the

and every one of the [c]onditions of [p]robation could result in further [c]ourt action.  If I violate my [p]robation, the [c]ourt could impose the sentence allowable by law."

The defendant applied for transfer of his probation supervision from Rhode Island to Pennsylvania pursuant to the Compact.  The transfer application, which is dated October 15, 2011 and was signed by defendant on January 4, 2012, provided, in pertinent part, that:

> "I, HARRY W. BROWN, am applying for transfer of my parole/probation/other supervision from RHODE ISLAND (sending state) to PENNSYLVANIA (receiving state).  I understand that this transfer of supervision will be subject to the rules of the Interstate Commission for Adult Offender Supervision.
>
> "I understand that my supervision in another state may be different than the supervision I would be subject to in this state.  I agree to accept any differences that may exist because I believe that transferring my supervision to PENNSYLVANIA (receiving state) will improve my chances for making a good adjustment in the community.  I ask that the authorities to whom this application is made recognize this fact and grant my request for transfer of supervision.
>
> "In support of my application for transfer, I make the following statements:
>
> "* * *
>
> "2.  I will comply with the terms and conditions of my supervision that have been placed on me, or that will be placed on me by RHODE ISLAND (sending state) and PENNSYLVANIA (receiving state).
>
> "3.  I understand that if I do not comply with all the terms and conditions that the sending state or the receiving state,

---

prior approval of the [c]ourt where you are seeking permission to leave the country, or prior approval of [the] Probation Officer where you are seeking permission to leave the State of Rhode Island"; (4) "[n]otify the Probation Officer immediately of any change of address, telephone number, or employment"; (5) "[i]nform the Probation Officer of my whereabouts and activities as required"; (6) "[m]ake every effort to keep steadily employed, attend school, and/or attend vocational training"; (7) "[w]aive extradition from anywhere in the United States to the State of Rhode Island if I am required to appear in any Rhode Island [c]ourt"; and (8) "[f]ulfill any and all [s]pecial [c]onditions of [p]robation as ordered by the [c]ourt."

- 3 -

or both, placed on me, that it will be considered a violation and I may be returned to the sending state."

Pennsylvania accepted the transfer request.

Meanwhile, defendant violated Pennsylvania's condition relating to the use of social-networking sites. On December 1, 2011, Pennsylvania sent Rhode Island a "Compact Action Request," indicating that Pennsylvania authorities "allowed [defendant] to have limited access to the [I]nternet. He took advantage of this privilege [by] utilizing a cell phone to access online dating sites." Through the Compact Action Request, one of the Pennsylvania parole agents assigned to defendant's case requested "that [Rhode Island] propose a special condition [on defendant] to not utilize or have access to the [I]nternet at any time." Rhode Island gave the following reply: "Per [C]ompact [R]ule 4.103, the receiving state can impose any conditions appropriate to offenders placed under supervision in the receiving state. Therefore, if [Pennsylvania] wishes to impose a condition of no [I]nternet access, it has the authority to do so."[3]

Pennsylvania thereafter imposed several additional conditions. On July 31, 2012, defendant signed two documents in which he agreed to comply with the following pertinent additional conditions:

> "You must not possess, view, listen to[,] or read any sexually explicit material, including any articles, literature, books, magazines, photographs, e-mails, websites, digital images, animated photographs or images, tapes, videos, or any content that may be or is broadcast by radio, television[,] or computer (including by satellite). Sexually explicit, for the purpose of this condition and all other conditions, is defined as actual or simulated depiction of the following: (1) sexual intercourse, including genital

---

[3] In this case, Rhode Island is referred to as the sending state, and Pennsylvania is the receiving state under the ICAOS. See ICAOS Rules, Rule 1.101 at 6, 7 (2016), available at http://www.interstatecompact.org/LinkClick.aspx?fileticket=qGvYF9N1mNU%3d&tabid=358&portalid=0&mid=4264.

– genital, oral – genital, anal – genital, hand – genital[,] or oral – anal intercourse; (2) be[]stiality; (3) masturbation; (4) sadistic or masochistic abuse; (5) exhibition of the genitals or pubic area of any person; and (6) nudity.

"* * *

"You must not form an intimate or romantic/sexual relationship with any person who has full or partial physical custody, including visitation rights, of anyone under the age of 18 years old without the prior written approval of probation/parole supervision staff and[,] if applicable, in agreement with your treatment provider."

We shall refer to these two conditions—together with the special condition regarding use of the Internet to access social-networking sites to which defendant agreed in December 2008 and with which he was obligated to comply—as the Pennsylvania conditions.

Pennsylvania parole agent Tracy Starzynski was assigned to defendant's case in November 2013. Starzynski met with defendant and reviewed the Pennsylvania conditions with him. The defendant stated that he understood the conditions and acknowledged that he knew that he was subject to them before his meeting with Starzynski. Notwithstanding this acknowledgment, defendant knowingly violated the Pennsylvania conditions.

On January 11, 2014, Starzynksi and other Pennsylvania parole agents searched defendant's residence and cell phone. In defendant's bedroom, parole agents found at least one pornographic DVD under his nightstand, as well as a stack of photographs depicting nude or partially clad women in his closet. The defendant admitted to parole agents that he used these materials to masturbate. In addition, on top of the stack of photographs that was discovered in his closet, parole agents found a photograph of a fully-clothed school-aged girl. The defendant admitted to parole agents that the girl in the photograph was the child of a woman with whom he recently had a yearlong dating relationship. Finally, a search of defendant's phone revealed that he once again had been using dating and social-networking sites. The profile names used by

defendant this time were different from the earlier occasion when parole agents discovered his unauthorized use of social-networking sites.

Based on the evidence discovered during this search, defendant was charged with violating the Pennsylvania conditions. On January 14, 2014, defendant executed a form entitled "Waiver of Probable Cause Hearing and Admission Form" (waiver form), in which he proceeded to waive his right to counsel and his right to a probable-cause hearing in Pennsylvania; he also admitted that he violated the Pennsylvania conditions. The waiver form provided, in pertinent part, that:

> "I have been advised of my right to a probable[-]cause hearing and counsel representation at that hearing. With full knowledge and understanding of my right to counsel and a probable[-]cause hearing, I hereby waive those rights. I waive these rights of my own free will, without promise, threat[,] or coercion.
>
> "* * *
>
> "On the 14[th] day of January two thousand and [fourteen], I[,] Harry Brown[,] do knowingly, intelligently, and voluntarily admit that I was in violation of the terms and conditions of my probation or parole. The specific violation(s) that I committed was/were [Rhode Island] Condition[] #8[,] * * * [Pennsylvania] Condition #7 ([counts] 1, 2, 3)[.] I knowingly, voluntarily[,] and willingly admit to the violation(s) listed above."

The Pennsylvania Board of Probation and Parole then notified Rhode Island that it found probable cause to believe that defendant had violated the Pennsylvania conditions; defendant was returned to this state.

The state filed a notice of probation violation under Rule 32(f) of the Superior Court Rules of Criminal Procedure. The Rule 32(f) violation report specified that "the grounds upon which action is sought to adjudge * * * defendant a violator" consisted of defendant's failure "to comply with a specific condition of probation in that he failed to keep the peace and remain of

- 6 -

good behavior. Said violation of probation is not contingent upon any specific criminal offense." At the probation violation hearing in Superior Court, Starzynski testified. Among other evidence, the state also submitted, over defendant's objection, the waiver form. The defendant's objection centered on the fact that, because Starzynski was not present when defendant executed the waiver form, there was no evidence that it was signed knowingly, voluntarily, and intelligently. The defendant did not cross-examine Starzynski or present any evidence, including any evidence bearing on the validity of the waiver form.

The hearing justice adjudged defendant to be a probation violator. He offered two grounds for his decision. First, at the state's urging, the hearing justice determined that ICAOS Rules, Rule 4.103-1 (Rule 4.103-1) (2016) mandated that he treat the violations to which defendant admitted as a violation of his Rhode Island probation. Additionally, the trial justice went on to conclude that, irrespective of Rule 4.103-1's application, defendant's conduct in Pennsylvania amounted to a failure to keep the peace and remain of good behavior. With respect to this ground of decision, the hearing justice emphasized that "the actions that the [s]tate presented are sufficiently related to defendant's prior sexual misconduct that * * * it is of serious concern to the [c]ourt as to * * * defendant's ability to modify his sexual behavior so as not to be [a] danger to others, particularly children." He also noted that defendant "promised to abide by certain conditions and he didn't keep that promise."

The hearing justice executed eight years of the twenty-five years remaining on defendant's suspended sentence. The hearing justice considered the "number of serious charges" of which defendant stands convicted—twenty-seven counts of "criminal sexual behavior with his minor nieces when they visited him at his home and when he visited them in their home." He further found that "the acts which form the basis of a violation * * * are particularly disturbing to

- 7 -

the [c]ourt as they involve sexual behavior which he knew was a violation of the [Pennsylvania conditions]." The hearing justice explained that, "rather than conform his behavior to norms of proper sexual behavior, [defendant] once again has played out his sexual fantasies in a manner that causes the [c]ourt concern that he has not yet learned appropriate sexual conduct." The hearing justice found that "defendant presents a danger to the safety and well-being of the community." Additionally, the hearing justice imposed two new conditions of probation for the remainder of his suspended sentence: (1) that he refrain "from being in the presence of or communicating with persons under the age of [eighteen]"; and (2) that he be "prohibited from the use of computers." The defendant objected that eight years of imprisonment was excessive; he did not, however, raise any objection to the new probation conditions. The defendant timely appealed.

## Analysis

### Scope of Rule 4.103-1

"[W]e review questions of statutory interpretation de novo." State v. Hazard, 68 A.3d 479, 485 (R.I. 2013) (quoting Campbell v. State, 56 A.3d 448, 454 (R.I. 2012)). In this case, we must interpret a rule promulgated by the Interstate Commission on Adult Offender Supervision (Commission). Under the Compact, these rules "have the force and effect of statutory law and shall be binding in the compacting states." Section 13-9.1-1.3, article V(2); see also id., article XIV, Section B. We therefore review de novo the question of Rule 4.103-1's meaning.

The ICAOS is a "congressionally authorized agreement among states governing the transfer of supervision of adult offenders," M.F. v. New York Executive Department Division of Parole, 640 F.3d 491, 492 (2d Cir. 2011), and, as such, "has the force of federal law," id. at 494. See also id. at 495 n.5. It has been enacted in all fifty states, the District of Columbia, Puerto

Rico, and the United States Virgin Islands. See Goe v. Commissioner of Probation, 46 N.E.3d 997, 1002 (Mass. 2016); see also ICAOS Bench Book for Judges and Court Personnel (Bench Book) § 2.7 at 40-41 (2016), available at http://www.interstatecompact.org/ LinkClick.aspx?fileticket=LI8ci1ipSOM%3d&tabid=358&portalid=0&mid=4264. This Court has never before had occasion to interpret either the Compact or one of the rules promulgated by the Commission.

The ICAOS Rules direct a receiving state—such as Pennsylvania in this case—to "supervise an offender transferred under the * * * [C]ompact in a manner determined by the receiving state and consistent with the supervision of other similar offenders sentenced in the receiving state." ICAOS Rules, Rule 4.101 at 40 (2016), available at http://www.interstatecompact.org/LinkClick.aspx?fileticket=qGvYF9N1mNU%3d&tabid=358& portalid=0&mid=4264; see also ICAOS Advisory Op. No. 2-2005, at 6 (Mar. 4, 2005), available at http://www.interstatecompact.org/Portals/0/library/legal/advisoryopinions/AdvisoryOpinion _2-2005_FL.pdf ("The ICAOS rules require the receiving state to supervise out-of-state offenders under the same standards as it would supervise in-state offenders."). To achieve compliance with this directive, receiving states are expressly authorized to "impose a special condition on an offender transferred under the * * * [C]ompact if that special condition would have been imposed on the offender if sentence had been imposed in the receiving state." ICAOS Rules, Rule 4.103(a) at 42 (2016), available at http://www.interstate compact.org/LinkClick.aspx?fileticket=qGvYF9N1mNU%3d&tabid=358&portalid=0&mid=426 4. Pennsylvania followed these rules in this case when it imposed the Pennsylvania conditions

on defendant's supervision, and it is undisputed that Brown acknowledged Pennsylvania's authority to do so and agreed to comply with each of the Pennsylvania conditions.[4]

When, as in this case, an offender fails to comply with an additional condition imposed by the receiving state, Rule 4.103-1 is implicated. That rule provides that:

> "For purposes of revocation or other punitive action against an offender, the probation or paroling authority of a sending state shall give the same effect to a violation of special conditions or requirement[s] imposed by a receiving state as if those conditions or requirement[s] had been imposed by the sending state. Failure of an offender to comply with special conditions or additional requirements imposed by a receiving state shall form the basis of punitive action in the sending state notwithstanding the absence of such conditions or requirements in the original plan of supervision issued by the sending state. For purposes of this rule, the original plan of supervision shall include, but not be limited to, any court orders setting forth the terms and conditions of probation, any orders incorporating a plan of supervision by reference, or any orders or directives of the paroling or probation authority." ICAOS Rules, Rule 4.103-1 at 43, available at http://www.interstatecompact.org/LinkClick.aspx?fileticket=qGvY F9N1mNU%3d&tabid=358&portalid=0&mid=4264.

The state argues that Rule 4.103-1 compels a Rhode Island Superior Court hearing justice to enter an adjudication of probation violation whenever a Rhode Island offender who has been transferred under the Compact violates an additional condition of supervision imposed by a receiving state. We disagree that Rule 4.103-1 imposes such a duty—or, indeed, any duty—on a Superior Court hearing justice.

---

[4] The state appears to assert that, because defendant acknowledged in his transfer application that Pennsylvania could impose additional conditions and agreed that a failure to comply with the Pennsylvania conditions "will be considered a violation," defendant agreed that the Pennsylvania conditions became conditions of his Rhode Island probation. We reject this assertion. Although defendant acknowledges in the transfer application that noncompliance "with all the terms and conditions that the sending state or the receiving state, or both, placed on me * * * will be considered a violation and I may be returned to the sending state," there is nothing in that document that informs defendant that, if he violated the Pennsylvania conditions, he would be declared a probation violator in Rhode Island.

To be sure, Rule 4.103-1 undeniably imposes a duty on a sending-state entity: "the probation or paroling authority of a sending state." Neither the Compact nor the ICAOS Rules define this entity, but it clearly does not encompass the courts of a sending state. The third sentence of Rule 4.103-1 draws a distinction between a "court" in the sending state and "the probation or paroling authority of a sending state," thus recognizing that they are separate entities. Id. ("[T]he original plan of supervision shall include, but not be limited to, any court orders setting forth the terms and conditions of probation, any orders incorporating a plan of supervision by reference, or any orders or directives of the paroling or probation authority." (emphases added)).

Therefore, we interpret Rule 4.103-1 as mandating that the probation or paroling authority of a sending state undertake "revocation or other punitive action" against an offender for violating a condition imposed by the receiving state, irrespective of whether the condition was imposed by the sending state in the first instance.[5] Failure to comply with the conditions imposed in the receiving state clearly forms the basis of punitive action in the sending state. The rule does not mandate, however, that a Superior Court hearing justice mechanically hold that a

---

[5] Although the second sentence of Rule 4.103-1 does not explicitly identify the entity to which it is directed, it—like the first sentence of the rule—uses the term "punitive action," which the first sentence connects to the probation or paroling authority of the sending state. See Rule 4.103-1 ("For purposes of revocation or other punitive action against an offender, the probation or paroling authority of a sending state shall give the same effect to a violation of special conditions or requirement[s] imposed by a receiving state as if those conditions or requirement[s] had been imposed by the sending state. Failure of an offender to comply with special conditions or additional requirements imposed by a receiving state shall form the basis of punitive action in the sending state notwithstanding the absence of such conditions or requirements in the original plan of supervision issued by the sending state." (emphases added)). Therefore, we conclude that the first two sentences of Rule 4.103-1 work in tandem to specify the duty imposed on the probation or paroling authority of the sending state.

violation of a condition imposed by the receiving state constitutes a violation of defendant's probation in the sending state.[6]

---

[6] We note that the language of the Bench Book concerning Rule 4.103-1 departs somewhat from the text of the rule. The Bench Book provides, in pertinent part, that:

> "Revocation or Punitive Action by the Sending State – Special Conditions
>
> "For purposes of revocation or other punitive action, a <u>sending state</u> is required to give the same effect to the violation of a special condition imposed by the receiving state as if the condition had been imposed by the sending state. Furthermore, the violation of a special condition imposed by the receiving state can be the basis of punitive action even though it was not part of the original plan of supervision established by the sending state. Special conditions may be imposed by the receiving state at the time of acceptance of supervision or during the term of supervision, [s]ee Rule 4.103. Thus by way of example, if at the time of acceptance, a receiving state imposed a condition of drug treatment and the offender violated that condition, the <u>sending state</u> would be required to give effect to that violation even though the special condition was not a part of the original plan of supervision.
>
> "PRACTICE NOTE: A <u>sending state</u> must give effect to the violation of a special condition or other requirement imposed by the receiving state even if the condition or requirement was not contained in the original plan of supervision." Bench Book § 4.5 at 98 (emphases added).

Significantly, the focus of Rule 4.103-1, however, is not directed at the sending state generally, but at a particular entity of the sending state: namely, <u>the probation or paroling authority of the sending state</u>. Nothing in the Compact or the ICAOS Rules suggests that this entity is synonymous with the sending state; if that were so, the reference to "the probation or paroling authority" would be entirely superfluous. <u>Cf.</u> <u>State v. Clark</u>, 974 A.2d 558, 571-72 (R.I. 2009) ("[T]he Legislature is presumed to have intended each word or provision of a statute to express a significant meaning, and the [C]ourt will give effect to every word, clause, or sentence, whenever possible. * * * [N]o construction of a statute should be adopted that would demote any significant phrase or clause to mere surplusage." (internal quotation marks omitted)). In any event, we are not concerned with any discrepancies between the Bench Book and Rule 4.103-1 because neither text purports to impose the duty to take punitive action on the courts of a sending state. Moreover, only the rule has the force of law, and the Bench Book may not be used to contradict the clear meaning of the ICAOS Rules. <u>See</u> ICAOS Advisory Op. No. 1-2008, at 2, 4-5 (Mar. 18, 2008) <u>available</u> <u>at</u> http://www.interstatecompact.org/Portals/0/library/legal/advisoryopinions/AdvisoryOpinion_1-2008_MA.pdf.

We are not unmindful of the fact that our conclusion somewhat conflicts with the decision of the Florida District Court of Appeal in Critelli v. State, 962 So. 2d 341, 343-44 (Fla. Dist. Ct. App. 2007), which appears to be the only reported judicial decision addressing the scope of Rule 4.103-1. In Critelli, 962 So. 2d at 342, the offender completed a transfer application containing language similar to the transfer application in this case. The receiving state, Colorado, accepted the offender's application and imposed several additional conditions of supervision (the Colorado conditions). Id. When the offender failed to comply with the Colorado conditions, Colorado notified the sending state, Florida, of this development, and the trial court in Florida "concluded that [the offender] had violated his probation by failing to abide by the Colorado conditions," revoked his probation, and ordered that he be incarcerated. Id.

On appeal, the court first held that the offender voluntarily modified his probation when he filled out the transfer application and accepted the Colorado conditions:

> "[I]n this case, [the offender] asked to have his probation transferred to Colorado. Colorado conditioned its acceptance on his agreement to the Colorado conditions. We view this as a voluntary modification of his probation. [The offender] signed an Interstate Compact application under which he agreed to abide by both Florida's and Colorado's conditions of probation. There can be no doubt that [the offender] was fully aware of the conditions of his probation added by Colorado and had the opportunity to object to those conditions. If [the offender] did not wish to abide by the Colorado conditions, he did not have to sign the Interstate Compact and could have remained in Florida." Critelli, 962 So. 2d at 343.

The court then rejected the argument that "the only penalty for a violation of the Colorado conditions was to return him to Florida, not the revocation of his probation." Id. After quoting Rule 4.103-1, the court held: "This rule clearly refutes [the offender]'s argument. Further, [the offender] should not be able to accept the benefits of his transfer to Colorado, and then fail to carry out the required conditions." Critelli, 962 So. 2d at 344.

We agree with the <u>Critelli</u> court's conclusion that Rule 4.103-1 foreclosed the offender's argument that retaking by the sending state was the only consequence of violation of the receiving state's additional conditions. However, <u>Critelli</u> relies upon the notion that the language of the transfer application in that case represented the offender's "voluntary modification of * * * probation." <u>Critelli</u>, 962 So. 2d at 343. The transfer application executed by defendant in this case leads us to a different conclusion. We are of the opinion that this transfer application did not constitute a modification of defendant's probation; indeed, the application does not indicate that a violation of an additional condition imposed by Pennsylvania would automatically lead to an adjudication of probation violation in Rhode Island. <u>See supra</u> note 4. We also note that <u>Critelli</u> does not speak to what entity Rule 4.103-1 tasks with taking punitive action in the sending state—the probation or paroling authority. We deem the precise scope of Rule 4.103-1 to be critical to the issue with which we are confronted.

Although defendant challenges the authority of the Commission to mandate that courts of a sending state automatically adjudicate an offender to be a probation violator on the basis of a violation of a condition of supervision imposed by a receiving state, we need not address these contentions because the plain text of Rule 4.103-1 does not purport to exercise such authority.[7] We hold that Rule 4.103-1 imposes upon the probation or paroling authority of the sending state the duty to undertake revocation or other punitive action against an offender for violation of a condition imposed by the receiving state, even where, as here, the additional condition was not

---

[7] In particular, defendant argues that, if his violation of the Pennsylvania conditions must result in a probation violation adjudication in Superior Court under Rule 4.103-1, (1) the Compact constitutes an unconstitutional legislative delegation of judicial power; and (2) the addition of new conditions of probation to those ordered by the trial justice violates the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution.

one that was imposed by the sending state.[8]  However, this rule does not impose a corresponding duty on the Superior Court.  Therefore, the probation or parole authorities of this state are required under Rule 4.103-1 to take punitive action against an offender.  Clearly, the conduct underlying a violation of an agreed-upon condition of supervision in the receiving state can form the basis for presentment pursuant to Rule 32(f) and a violation hearing in accordance with our settled law.  A hearing justice must determine whether that conduct amounts to a failure to keep the peace and remain of good behavior.  And, as we explain below, a hearing justice conducting a probation violation hearing in a Compact case such as this one—including one that involves a determination of whether a waiver form was executed knowingly, intelligently, and voluntarily—should strive to accommodate the realities of such a case.

### Hearing Justice's Adjudication of Probation Violation

With the precise scope of Rule 4.103-1 in focus, we turn to the hearing justice's adjudication of probation violation.  The sole focus of a probation violation hearing is to determine whether a defendant has failed to keep the peace and remain of good behavior or has otherwise violated the terms and conditions of his or her probation.  State v. Gibson, 126 A.3d 427, 431 (R.I. 2015).  The state bears the burden to "prove to the reasonable satisfaction of the

---

[8] We note that neither the Compact nor the ICAOS Rules define the term "punitive action." Under G.L. 1956 § 12-19-9, "[w]henever any person * * * violates the terms and conditions of his or her probation as fixed by the court, the police or the probation authority shall inform the attorney general of the violation, and the attorney general shall cause the defendant to appear before the court." This occurred in this case. At oral argument, the state represented that there is confusion within the probation and parole unit of the Rhode Island Department of Corrections (DOC) regarding the requirements of the ICAOS in this area. The DOC is encouraged to seek an advisory opinion from the Commission in the event that such confusion arises in the future. See ICAOS Rules, Rule 6.101(c) at 71 (2016), available at http://www.interstatecompact.org/ LinkClick.aspx?fileticket=qGvYF9N1mNU%3d&tabid=358&portalid=0&mid=4264 ("Any state may submit an informal written request to the executive director [of the Commission] for assistance in interpreting the rules of [the] [C]ompact.").

[hearing] justice" that the terms and conditions of probation have been violated.[9] Id. (quoting Hazard, 68 A.3d at 499). "We review a [hearing] justice's adjudication of probation violation deferentially, reversing only where the [hearing] justice 'acted arbitrarily or capriciously in finding a violation.'" Id. (quoting Hazard, 68 A.3d at 499). The defendant argues that the conduct that violated the Pennsylvania conditions was "perfectly non-criminal, normal conduct" that does not "even remotely approach[] a failure to be of good behavior." We reject this argument.

There is no requirement that, for conduct to amount to a failure to keep the peace and remain of good behavior, it must be criminal in nature. See State v. Vieira, 883 A.2d 1146, 1148 (R.I. 2005) ("At a probation violation hearing, we faithfully have held that the state is not required to prove that a defendant has committed a crime; instead, the state must prove through reasonably satisfactory evidence that a defendant has failed to keep the peace or remain of good behavior."); see also G.L. 1956 § 12-19-18(c) (recognizing "the ability of the court to revoke a suspended sentence or probationary period for an allegation of conduct that does not rise to the level of criminal conduct"); see, e.g., State v. Gautier, 774 A.2d 882, 887, 888 (R.I. 2001) (holding, in quashing entry of judgment finding that the defendant did not violate his probation, that "[t]he fact that [the] defendant was present during * * * a brutal slaying and that he had failed to notify the police after he fled the scene was enough to establish that his conduct on the day in question 'had been lacking in the required good behavior expected and required by his probationary status'" (quoting State v. Godette, 751 A.2d 742, 745 (R.I. 2000))).

---

[9] On June 21, 2016, this Court entered an order adopting an amendment to Rule 32(f) of the Superior Court Rules of Criminal Procedure that changes the burden of proof at a probation violation hearing to "a fair preponderance of the evidence." In re Amendments to Superior Court Rules of Criminal Procedure and Sentencing Benchmarks, at 1 (R.I., filed June 21, 2016) (mem.). This amendment has no bearing on this case.

In this case, the hearing justice set forth two grounds to support his conclusion that defendant failed to keep the peace and remain of good behavior. First, he noted that defendant "promised to abide by certain conditions and he didn't keep that promise." Second, he found that defendant's "actions * * * are sufficiently related to defendant's prior sexual misconduct that * * * it is of serious concern to the [c]ourt as to * * * defendant's ability to modify his sexual behavior so as not to be [a] danger to others, particularly children." Viewing the totality of defendant's conduct, we cannot say that the hearing justice acted arbitrarily and capriciously in finding that defendant failed to keep the peace and remain of good behavior.

For starters, defendant voluntarily agreed to abide by the Pennsylvania conditions in exchange for the benefit of remaining in Pennsylvania, and he persistently failed to uphold his end of the bargain. In other words, defendant entered into a contract with Pennsylvania regarding the manner in which he would behave while residing in that state. In this respect, then, defendant's agreement with Pennsylvania is not unlike the contract he signed with the DOC. The defendant agreed in the Rhode Island Conditions of Supervised Probation to obey several conditions that were not imposed by the trial court, including to "[r]emain within the State of Rhode Island, except with the * * * prior approval of [the] Probation Officer where you are seeking permission to leave the State of Rhode Island." If a defendant leaves the state in violation of the contract that he or she signed with the DOC, that conduct is relevant in a probation violation hearing. See, e.g., State v. Murray, 22 A.3d 385, 386-87 (R.I. 2011) (mem.) (the defendant adjudged to be a probation violator where he left the state without permission); see also State v. Roberts, 59 A.3d 693, 695-96 (R.I. 2013) (state filed a probation violation report against the defendant based, in part, on his departure from the state without permission; the defendant admitted the violation). Similarly, the hearing justice did not act arbitrarily or

capriciously in treating defendant's breach of his contract with Pennsylvania as evidence that he failed to keep the peace and remain of good behavior.

Importantly, treating defendant's breach of the Pennsylvania conditions as evidence of failure to keep the peace and remain of good behavior is not tantamount to making the Pennsylvania conditions part of the terms and conditions of the probationary sentence imposed by the trial justice. The violation of the Pennsylvania conditions is not itself a violation of defendant's probation, but it is merely evidence of his failure to keep the peace and remain of good behavior. Cf. State v. Bellem, 56 A.3d 432, 435 (R.I. 2012) (affirming hearing justice's conclusion that "the defendant failed to keep the peace and be of good behavior when he violated [two] no-contact orders [of which the hearing justice took judicial notice] by calling" the complaining witness). We by no means imply that every violation of an additional condition imposed by a receiving state will amount to a failure to keep the peace and remain of good behavior. To the contrary, as we demonstrate in this opinion, each case will require an assessment of the particular conduct involved.

Additionally, defendant's failure to comply with the condition relating to the use of dating and social-networking sites was persistent, willful, and alarming behavior by a convicted child molester. Starzynski testified that, before the violations of the Pennsylvania conditions that were the genesis of his return to Rhode Island, it was discovered that defendant used dating sites in violation of the relevant Pennsylvania condition. When Starzynski subsequently was assigned to his case, she reviewed the Pennsylvania conditions with defendant, and he stated that he understood the conditions and acknowledged that he was subject to them even before his meeting with Starzynski. And yet, despite being caught violating this condition on a prior occasion, defendant resumed the forbidden behavior and tried to obscure it by using a pseudonym. This

- 18 -

conduct reveals a persistent refusal to comply with the Pennsylvania conditions, to which defendant voluntarily agreed. Not only was his noncompliance repeated, the act of changing his username—ostensibly to avoid detection—indicates that defendant was acting with knowledge that he was violating this condition. Thus, defendant knowingly chose to engage in prohibited conduct and then sought to conceal his efforts. The testimony also reveals that defendant used several different dating sites the second time around. The defendant acted in brazen defiance of this agreed-upon behavioral condition.

Finally, contrary to another of the Pennsylvania conditions, defendant was in possession of a sizable stack of photographs of naked or scantily clad women in his bedroom closet. The defendant admitted that he used these photographs for masturbation. Significantly, sitting on the top of this stack was a photograph of a fully-clothed school-aged child. Given the numerous prior instances of first-degree child molestation for which defendant was on probation, the placement of a photograph of a minor child in a bedroom closet on top of the stack of images that defendant admittedly used for sexual gratification is highly suspicious and, indeed, disturbing behavior. Cf. State v. Pitts, 960 A.2d 240, 246 (R.I. 2008) (concluding that, even if the defendant's conduct—"masturbating in his van near a school"—did not constitute the criminal offense of disorderly conduct, "there was sufficient evidence for the hearing justice to conclude that he had violated his probation by failing to keep the peace and remain [of] good behavior" because "the fact that [the defendant] was engaged in a sexual act in a vehicle on a public highway, at a time when he was on probation for prior sex offenses, constituted a violation of the terms of his probation[;] [e]specially in light of this defendant's prior convictions

- 19 -

for child sexual molestation, his masturbating in his van near a school undoubtedly does not meet the test of good behavior").[10]

For these reasons, we are satisfied that the hearing justice did not act arbitrarily and capriciously in finding that defendant failed to keep the peace and remain of good behavior.

### Evidence from Receiving State

Before turning to defendant's arguments concerning the hearing justice's execution of a portion of his previously imposed sentence, we briefly pause to address the manner in which a hearing justice should proceed in a Compact case. The parties dispute the effect to be given to the waiver form signed by defendant in Pennsylvania in accordance with ICAOS Rule 5.108 (Rule 5.108). See ICAOS Rules, Rule 5.108(b) at 66 (2016), available at http://www.interstatecompact.org/LinkClick.aspx?fileticket=qGvYF9N1mNU%3d&tabid=358&portalid=0&mid=4264 ("No waiver of a probable[-]cause hearing shall be accepted unless accompanied by an admission by the offender to one or more significant violations of the terms or conditions of supervision."). The defendant argues that the hearing justice erred in admitting and giving conclusive effect to the waiver form. The state counters that, once a waiver form is signed, it "constitutes 'substantial evidence' of the violation regardless of whether it is corroborated by independent evidence." In this case, however, Starzynski appeared and testified, and her testimony and the other documentary evidence presented by the state provided a more than sufficient evidentiary basis to support the hearing justice's adjudication of probation

---

[10] At oral argument, defendant argued that the determination of what constitutes keeping the peace and remaining of good behavior needs to be the same for everyone, irrespective of the offenses of which a defendant stands convicted, or else the standard is unconstitutionally vague. This argument is not properly before us, however, because it was neither raised below nor argued in defendant's brief to this Court. In any event, we note that, in State v. Pitts, 960 A.2d 240, 246 (R.I. 2008), this Court considered the offenses of which the defendant was convicted in assessing whether his conduct amounted to a failure to keep the peace and remain of good behavior.

violation.  Therefore, we need not definitively decide the effect to be given to the waiver form or any other issues surrounding that document.

We nonetheless remain mindful of the burden that would be imposed on receiving-state officials if their physical presence were required in the sending state in every instance in order to establish a prima facie case of probation violation.  As the Commonwealth Court of Pennsylvania has explained,

> "holding a hearing or requiring a waiver in the receiving state is to make the Compact workable by avoiding the expense of parole agents coming to the sending state to testify.  Once a preliminary hearing is held finding probable cause or a parolee has signed a waiver admitting the violations, then under the Compact, a Case Closure Notice and Violation Report are sent to the sending state.  The sending state may then use that evidence to support the violation and the parolee is free to offer any explanation, which the [sending state] may consider in deciding whether to revoke his parole or impose backtime."  Sanders v. Pennsylvania Board of Probation and Parole, 958 A.2d 582, 586 (Pa. Commw. Ct. 2008).

We agree with our learned colleagues, but note that, in the revocation-of-probation context, the relevant considerations are broader.  Although a defendant in the probation violation context is not entitled to the full panoply of due process rights afforded to defendants in criminal proceedings, he or she is nonetheless entitled to "minimum due process protections: 'notice of the hearing, notice of the claimed violation, the opportunity to be heard and present evidence [on the] defendant's behalf, and the right to confront and cross-examine the witnesses against [the] defendant.'"  State v. Bernard, 925 A.2d 936, 938 (R.I. 2007) (quoting State v. Vashey, 823 A.2d 1151, 1155 (R.I. 2003)).  Of course, the right to confrontation is not absolute in a probation violation hearing; "hearsay may be admitted on issues central to determining whether a violation has been committed" so long as "the hearing justice first finds that 'there is good cause for denying confrontation and/or cross-examination.'"  Id. at 939 (quoting State v. DeRoche, 120

- 21 -

R.I. 523, 533, 389 A.2d 1229, 1234 (1978)). The critical assessment of whether the requisite good cause exists "is generally based on both 'the reliability of proffered substitute evidence and the state's explanation of why confrontation was undesirable or impractical.'" Id. (quoting State v. Casiano, 667 A.2d 1233, 1239 (R.I. 1995)).

These principles apply in Compact cases as well. For example, where a probable-cause hearing is held in the receiving state, see Rule 5.108(a) ("An offender subject to retaking for violation of conditions of supervision that may result in a revocation shall be afforded the opportunity for a probable[-]cause hearing before a neutral and detached hearing officer in or reasonably near the place where the alleged violation occurred."),[11] the offender is entitled to minimum due process protections, see Rule 5.108(d) ("The offender shall be entitled to the following rights at the probable[-]cause hearing: (1) Written notice of the alleged violation(s); (2) Disclosure of non-privileged or non-confidential evidence regarding the alleged violation(s); (3) The opportunity to be heard in person and to present witnesses and documentary evidence relevant to the alleged violation(s); (4) The opportunity to confront and cross-examine adverse witnesses, unless the hearing officer determines that a risk of harm to a witness exists."). Additionally, "[a]ny evidence or record generated during a probable[-]cause hearing shall be forwarded to the sending state." Rule 5.108(e). In such cases, a hearing justice in this state has

---

[11] Under the Compact, a probable-cause hearing is not required where the offender is convicted of a crime. See Rule 5.108(c) ("A copy of a judgment of conviction regarding the conviction of a new criminal offense by the offender shall be deemed conclusive proof that an offender may be retaken by a sending state without the need for further proceedings."). Such a judgment of conviction would similarly be deemed conclusive proof of a probation violation in this jurisdiction. Cf. State v. Seamans, 935 A.2d 618, 623 (R.I. 2007) ("[B]ecause [the] defendant entered a nolo contendere plea to the very offense that [the] defendant is disputing in his probation violation appeal, his appeal is moot. It is apparent that there no longer exists a controversy about whether [the] defendant committed the criminal conduct that gave rise to the probation violation.").

- 22 -

the discretion to decide whether or not good cause exists to admit the evidence from the probable-cause hearing at the probation violation hearing to avoid needless duplication. See Bernard, 925 A.2d at 939.[12]

The principles discussed in Bernard also apply in cases in which the offender waives the probable-cause hearing and admits to the violation. In cases where the validity of the waiver form is not challenged, the documentary evidence, including the violation reports and any other evidence compiled by the receiving state, is deemed sufficiently reliable, and a finding is made that requiring in-court testimony from the receiving-state actors is impractical or undesirable, the hearing justice is free to admit into evidence the record sent to this jurisdiction by the receiving state in accordance with the Compact. See Bernard, 925 A.2d at 939; cf. Sanders, 958 A.2d at 586 ("In this case, [the offender] signed the Waiver, which was entered into evidence without objection, listed the violations of the conditions of his parole, * * * and expressly stated: 'I admit to violation of my release as stated above.' * * * This admission alone constitutes substantial evidence for the [sending state] to make a finding that [the offender] violated his parole."). In other circumstances, the hearing justice may decide that the offender is entitled to confront and cross-examine witnesses for a particular purpose. For example, where the offender raises a fact-based challenge to the validity of the waiver form, the hearing justice may deem witness testimony necessary on that discrete issue.[13] If so, every effort should be made to minimize the

---

[12] This assumes, of course, that the probable-cause hearing in the receiving state complies with Rule 5.108. In a case where the probable-cause hearing fails to afford the offender the minimal due process requirements of Rule 5.108(d) and this Court's case law, this circumstance may lead a hearing justice in this state to conclude that good cause does not exist to admit the evidence from the probable-cause hearing.

[13] This is not to imply that witness testimony will be necessary every time such a challenge is lodged. In cases where the validity of the waiver form is sufficiently supported by evidence in the record transmitted by the receiving state—including notarization of the waiver form or

- 23 -

burden on receiving-state officials, including, for example, securing their testimony through video-conferencing technology or depositions, rather than live, in-court witness testimony.[14]

**Executed Sentence and Additional Conditions**

The defendant also argues that the eight-year incarcerative term ordered by the hearing justice was excessive and that the additional conditions he imposed are unlawful. We first tackle his challenge to the excessiveness of the executed portion of defendant's suspended sentence. A trial justice is afforded substantial discretion in deciding whether "to execute all or a portion of a defendant's previously suspended sentence after a finding of probation violation." Roberts, 59 A.3d at 697. In recognition of this discretion, we will disturb that decision only where an abuse of discretion has occurred. Id. We discern no abuse of discretion in this case.

In explaining his rationale for executing eight years, the hearing justice first examined the gravity of the offenses of which defendant stands convicted and then considered the degree of similarity between those offenses and the conduct that formed the basis of the adjudication of probation violation. In this respect, the hearing justice ably followed our case law. See State v. McKinnon-Conneally, 101 A.3d 875, 879 (R.I. 2014) ("When a hearing justice is deciding how much of a previously suspended sentence to execute, his or her primary focus should be on the nature of the first offense. * * * The circumstances of the second offense, however, may also be taken into account."). The defendant complains that the hearing justice overstated the connection between his convictions and his conduct in Pennsylvania, but he overlooks the fact

---

affidavits of the individuals who explained the waiver form and its consequences to the offender and in whose presence the waiver form was executed—a hearing justice certainly may deem witness testimony from the receiving-state officials unnecessary unless the offender first comes forward with evidence indicating that the waiver form is not valid.

[14] These alternatives are merely examples of the options available to hearing justices who must perform this delicate balancing; we by no means foreclose the adoption of any other reasonable alternative in a particular case.

that he kept a photograph of a fully-clothed school-aged child on top of a stack of photographs that he admittedly used for purposes of masturbation—a highly troubling circumstance given defendant's prior convictions for child molestation. Finally, the hearing justice deemed defendant "a danger to the safety and well-being of the community." In the circumstances of this case, we decline to second-guess this conclusion.

Additionally, although the eight-year incarcerative term ordered by the hearing justice was not insignificant, it represented only a fraction of the twenty-five years that remained on defendant's suspended sentence. See § 12-19-9 ("Upon a determination that the defendant has violated the terms and conditions of his or her probation the court, in open court and in the presence of the defendant, may remove the suspension and order the defendant committed on the sentence previously imposed, or on a lesser sentence, or impose a sentence if one has not been previously imposed, or may continue the suspension of a sentence previously imposed, as to the court may seem just and proper."). Therefore, even though defendant claims that he "had gone eight years without a single violation of parole or probation"—a claim that overlooks his prior violation of Pennsylvania's social-networking condition—the hearing justice was not prevented from executing a portion (or, indeed, all) of his suspended sentence. See Vieira, 883 A.2d at 1149, 1150 ("[The] defendant's assertion that he had been of good behavior from 1995 until he violated his probation in 2001 did not prevent the hearing justice from imposing the full sentence [of nine years and six months]."). In short, the hearing justice appropriately considered the relevant conduct and stated plausible reasons for his decision on how much of the suspended sentence to execute; thus, he did not abuse his discretion in ordering defendant to serve eight years at the ACI.

Finally, defendant challenges the hearing justice's imposition of two additional conditions of probation.[15]  Although § 12-19-9 grants a hearing justice "'considerable discretion'" in deciding how much, if any, of the suspended sentence to execute, "a probation-revocation justice has no discretion to fashion a sentence that is not allowed by law." Roberts, 59 A.3d at 699 (quoting State v. Tucker, 747 A.2d 451, 454 (R.I. 2000)).  It is well settled that, because

> "'the intention of the justice who originally imposed the suspended sentence[] is controlling and * * * the justice who finds a violation of probationary status and executes the sentence is bound by the initial determination[,]' * * * a 'trial justice at [a] violation hearing [does] not possess the statutory power to amend or decrease the sentence as originally imposed and [is] bound by the terms of that sentence.'" Id. (quoting State v. Heath, 659 A.2d 116, 116, 117 (R.I. 1995)).

In State v. Taylor, 473 A.2d 290, 290 (R.I. 1984), the hearing justice executed the entirety of the defendant's two previously suspended sentences; in addition, he "imposed an additional five-year period of probation to commence upon [the defendant's] release."  We held that the hearing justice "plainly exceeded his statutory jurisdiction as explicitly defined in § 12-19-9" because "[that] statute does not allow for the imposition of an additional probationary period after the execution of a suspended sentence by the revoking justice." Taylor, 473 A.2d at 291.

---

[15] The state contends that, because defendant failed to object to the imposition of these conditions below, he failed to preserve the issue for our review and that defendant's arguments concerning these conditions should not be addressed until defendant files either a motion to correct an illegal sentence under Rule 35(a) of the Superior Court Rules of Criminal Procedure or an application for postconviction relief.  Although this argument is not without persuasive force, we decline to apply the raise-or-waive rule in the unique circumstances of this case.  The hearing justice clearly lacked authority to impose any additional conditions, and, for that reason, we proceed to address this argument.  However, we in no way retreat from our venerable raise-or-waive rule.

So it is here.  By its plain language, § 12-19-9 does not grant a probation violation hearing justice any authority to impose additional conditions not imposed by the trial justice who sentenced the defendant.[16]  Therefore, in imposing the two additional conditions, the hearing justice "plainly exceeded his statutory jurisdiction."  Taylor, 473 A.2d at 291.  Accordingly, we vacate that portion of the judgment that purports to impose these conditions.

## Conclusion

For these reasons, we affirm in part and vacate in part.  We affirm the hearing justice's adjudication of probation violation and his decision to execute eight years of the defendant's twenty-five-year suspended sentence.  We vacate the hearing justice's imposition of two new conditions of probation.  The papers in this case may be remanded to the Superior Court.

---

[16] Section 12-19-8(c) is not implicated in this case.



# RHODE ISLAND SUPREME COURT CLERK'S OFFICE

## *Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**        State v. Harry W. Brown.

**CASE NO:**        No. 2014-194-C.A.
(K1-95-890A)

**COURT:**        Supreme Court

**DATE OPINION FILED:**  July 15, 2016

**JUSTICES:**        Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**        Associate Justice Maureen McKenna Goldberg

**SOURCE OF APPEAL:**   Kent County Superior Court

**JUDGE FROM LOWER COURT**:

                   Associate Justice Allen P. Rubine

**ATTORNEYS ON APPEAL:**

                   For State:  Lauren S. Zurier
                         Department of Attorney General

                   For Defendant:  Kara J. Maguire
                         Office of the Public Defender