STATE OF MAINE                                  UNIFIED CRIMINAL DOCKET
CUMBERLAND, ss                                  No. CR-07-2091


STATE OF MAINE


v.                                              ORDER


BRUCE SANBORN,

                    Defendant


Before the court is the issue of whether defendant Bruce Sanborn's probation has been

tolled, which would allow the State to pursue motions to revoke Sanborn's probation. A hearing

was held on November 15, 2018.

This case turns in part on the Interstate Compact for Adult Offender Supervision

("Interstate Compact" or "ICAOS"), which governs the interstate transfer of persons who are on

probation or parole. 34-A M.R.S. §§ 9871-9888. The actual procedures governing interstate

transfer of probationers and parolees are not set forth in the Interstate Compact itself but are set

forth in regulations issued to implement the Compact. *See* 34-A M.R.S. § 9877(1). [1]


Facts

On January 22, 2008 Sanborn entered guilty pleas in Cumberland County docket no. CR-

07-2091 to charges of Class C Assault and Class C Terrorizing. These were felony charges because

---

[1]  The current version of those regulations is available on the internet,
(https://www.interstatecompact.org/sites/default/files/pdf/legal/ICAOS-2018-Rules-ENG.pdf), but those
regulations have been amended since 2009. However, through the efforts of the Cleaves Law Librarian
using a "wayback" search on archive.org, the court believes it has located the regulations that were in effect
in 2009, which is the relevant time period in this case. A copy of those regulations has been placed in the
file.

Sanborn had two prior assault convictions in New Hampshire within the preceding 10 years. Sanborn received a sentence of four years, all but six months suspended, with three years of probation, concurrent on both counts.

Sanborn was released in February 2008, and his probation was thereafter transferred to New Hampshire pursuant to the Interstate Compact.

The next event in this case was a November 12, 2009 motion signed by Probation Officer David Edwards to revoke Sanborn's probation based on (1) charges of assault, resisting arrest, and disorderly conduct that had allegedly occurred in New Hampshire on September 23, 2009, (2) alleged failures to attend a certified batterers program, and (3) an alleged failure to report to his New Hampshire probation officer.[2] This motion was based in part on an October 20, 2009 Offender Violation Report that had been sent to Maine by New Hampshire pursuant to the Interstate Compact. See Defendant's Ex. 1 at pp. 6-7. Edwards's motion also included details, presumably obtained from New Hampshire authorities, that went beyond the information contained in the New Hampshire violation report.

In his cover memorandum to the November 12, 2009 motion, Edwards informed the clerk's office that Sanborn was in the Belknap N.H. County Jail and that New Hampshire authorities were requesting that Sanborn be returned to Maine to face probation revocation in Maine. See Defendant's Ex. 1 at p.1.

In filing the Maine probation motion, Edwards sought a warrant, stating that he could not locate Sanborn "for the purposes of arrest or summons." See Defendant's Ex. 1 at p. 9. A warrant was duly issued, but in part because Edwards had not specified that he was seeking extradition

---

[2] Although dated November 12, 2009, the motion was filed on November 23, 2009.

from New Hampshire, the warrant was a "Maine only" warrant.[3] As a result, it was not filed as a detainer against Sanborn in New Hampshire, and there is no evidence that Sanborn was made aware that Maine had filed the November 12, 2009 probation motion.

At some point Sanborn was released from the Belknap County Jail on the 2009 New Hampshire charges. The record does not reflect how those charges were resolved. Sanborn remained in New Hampshire. Although Maine's November 12, 2009 probation revocation motion remained pending, there was no action on that motion because of the "Maine only" warrant.[4]

In 2014 and again in 2015 Sanborn was convicted in New Hampshire on felony drug possession charges. On the 2014 charges he received a sentence of not more than 3 years and not less than 1 year. On the 2015 charges he received a sentence – consecutive to his 2014 sentence – of not more than 5 years and not less than 1 year.

At some point, according to the testimony at the November 15, 2018 hearing, New Hampshire sent a case closure notice to Maine under the Interstate Compact. That notice was apparently sent because Sanborn had been sentenced in New Hampshire to more than 180 days, which was a basis for a case closure notice under ICAOS Rule 4.112(a)(3) (June 2009).[5] As far as the record reflects, Maine took no action in response to the case closure notice. Most likely, this

---

[3] See the fifth page of Defendant's Ex. 1, which is a form submitted by Probation when warrants are requested. Near the bottom of the form is an area marked "Extradition Detail" with four categories that can be circled: "Maine," "New England," "Nationwide," or "Other." No categories were circled on Edwards's request. The clerk's office could and perhaps should have requested clarification from Edwards, but did not do so, instead issuing a "Maine only" warrant.

[4] In addition, although New Hampshire had previously requested that Sanborn be returned to Maine for proceedings on his Maine probation, New Hampshire does not appear to have made any further effort to pursue that request.

[5] That rule remains unchanged in the current regulations.

was because no one realized that Maine had not issued a warrant that would have the effect of a detainer in New Hampshire.

Sanborn served his New Hampshire sentences and was released on parole in New Hampshire in 2016.

In July of 2018 Maine Probation Officer Catherine Fisher was reassigned Sanborn's file, saw that no action had been taken on the November 12, 2009 motion, learned that Sanborn was on parole in New Hampshire, and realized that the "Maine only" warrant was deficient.

On July 18, 2018 Fisher requested that the warrant on the November 12, 2009 probation motion be reissued to include extradition from New Hampshire. The file reflects that Sanborn was then detained in New Hampshire and was bailed on condition that he "make contact with appropriate Maine authorities." After speaking with Probation Officer Fisher, Sanborn's N.H. parole officer instructed Sanborn to report in Maine on July 27, 2018. Sanborn did not do so.

On July 27, 2018 Probation Officer Fisher filed a second motion to revoke Sanborn's probation, based on the two New Hampshire drug possession convictions and his failure to report on July 27. That resulted in Sanborn's appearance in Maine, which in turn led to a motion by Sanborn seeking to dismiss the probation revocation proceeding. In that motion Sanborn contends that his probation had expired because Maine had waited too long and had not followed the applicable rules under the Interstate Compact. In the meantime Sanborn has been released on bail to reside in New Hampshire.

Discussion

Typically, the filing of a motion to revoke probation tolls the period of probation unless the motion is withdrawn or unless no violation of probation is ultimately found. *See* 17-A M.R.S.

4

§ 1206(7-C). The issue before the court is whether the November 12, 2009 revocation motion tolled Sanborn's probation. If it did not, Sanborn's probation would have expired sometime in 2011, and he would not be subject to revocation proceedings in Maine, either on the November 2009 motion or on the subsequent July 2018 motion.

Sanborn's argument that his probation was not tolled is based on Maine's delay in pursuing the case and on Maine's alleged failure to follow ICAOS regulations.

The applicable regulations as in effect in November 2009 provided that the "receiving state" (in this case, New Hampshire) shall notify the sending state (Maine) of "significant violations of conditions of supervision" by sending a violation report. ICAOS Rule 4.109(a), (b) (June 2009). The sending state shall respond within 10 days, including in its response the action to be taken. ICAOS Rule 4.109(c) (June 2009).

In this case New Hampshire sent Maine an Offender Violation Report dated October 20, 2009. Defendant's Ex. 1 pp. 6-8. There is nothing in the record to indicate whether Maine responded to New Hampshire within 10 days, although a response could have been transmitted electronically. In any event, Probation Officer Edwards eventually responded by filing the November 12, 2009 motion to revoke.

Current ICAOS Rule 4.109(a) indicates that offender violation reports shall be sent based on behavior "requiring retaking" by the sending state. In 2009, however, the rule referred only to the sending of reports in the case of "significant violations" and did not specify that retaking was "required."[6] However, Edwards had stated in his transmittal memorandum to the clerk's office that

---

[6] Under the current regulations retaking is mandatory for felony convictions, for convictions for violent crimes, or in instances where the receiving state determines that the offender's behavior requires retaking. Current ICAOS Rules 5.102, 5.103. In 2009 retaking was mandatory for felony convictions and for a showing of "three or more significant violations arising from separate incidents that establish a pattern of non-compliance with conditions of supervision." ICAOS Rules 5.102, 5.103 (June 2009). Under the 2009 rules, retaking would not have been mandatory based on the facts reported in New Hampshire's October

5

"New Hampshire authorities are requesting that the subject be returned to Maine to face probation revocation here." Retaking by Maine was therefore contemplated in this case, but that did not happen because of the "Maine only" warrant.

The defense argues that Probation Officer Edwards misled the court when in seeking a warrant, he stated that he could not locate Sanborn "for the purposes of arrest or summons." The court disagrees. First, in the same packet of documents Edwards informed the clerk's office that Sanborn was in the Belknap N.H. County Jail. Second, as a Maine probation officer Edwards did not have authority to act in New Hampshire and could not have arrested or summonsed Sanborn in New Hampshire. The wording that a probationer cannot be located "for the purposes of arrest or summons" – which is standard language on requests for probation violation warrants – applies to a probationer who has left the state as well as to a probationer whose whereabouts is unknown.

Nevertheless, it is evident that Maine seriously dropped the ball when it failed to pursue the November 12, 2009 probation motion with a warrant applicable in New Hampshire. This is particularly true because of the significant length of time – almost nine years – between the filing of the November 2009 motion and the first time that an adequate warrant was issued.

The next question is whether Maine violated the ICAOS Regulations and if so, whether that would prevent the tolling of Sanborn's probation.

Retaking based on New Hampshire's October 20, 2009 violation report would not have been mandatory, but the 2009 Rules contain a provision that a sending state "shall retake an offender within 30 calendar days after the decision to retake has been made or upon release of the offender from incarceration in the receiving state." ICAOS Rule 5.105 (June 2009). Interpreted literally, this rule required Maine to retake Sanborn when he was released from the Belknap County

20, 2009 Offender Violation Report, which did not report either a felony conviction or three or more significant violations arising from separate incidents.

jail after resolution of the New Hampshire charges set forth in New Hampshire's October 20, 2009 Offender Violation Report. Maine did not comply with this regulation.[7]

However, nothing in the Interstate Compact regulations specifies what follows when the regulations are violated. On one hand, 34-A M.R.S. § 9884(2) states that the rules adopted by the Interstate Commission "are binding upon the compacting states." On the other hand, there is federal precedent that the Interstate Compact and its regulations are designed to govern the relationships of the contracting states and are not a source of rights for probationers or parolees. *M.F. v. New York Executive Department Division of Parole,* 640 F.3d 491, 495-96 (2d Cir. 2011); *Doe v. Pennsylvania Board of Probation and Parole,* 513 F.3d 95, 104 (3d Cir. 2008). The court finds the federal decisions to be persuasive on this issue.

The court therefore does not find that non-compliance by Maine with the Interstate Compact regulations relieves Sanborn of his probation in this case.

It is perhaps a closer question whether the failure of Maine to pursue the November 12, 2009 revocation motion, either with an adequate warrant or otherwise, for almost nine years would constitute the kind of gross negligence or waiver of jurisdiction which would give rise to a finding that subjecting Sanborn to continued probation in Maine would constitute a violation of substantive due process. *Compare Shields v. Beto,* 370 F.2d 1003 (5th Cir. 1967) (where defendant was extradited to Louisiana before his Texas sentence was completed, where he served Louisiana sentence and was released on parole, and where Texas then waited 18 years before seeking to compel defendant to serve the remainder of his Texas sentence, granting Texas request would be

---

[7] ICAOS Rule 5.105 was amended in 2014 to provide that a sending state "shall retake an offender within 30 calendar days after the offender has been taken into custody on the sending state's warrant and the offender is being held solely on the sending state's warrant" (emphasis added). If this rule had been in effect in 2009, there would have been no violation because Sanborn had not been taken into custody on Maine's warrant.

7

inconsistent with fundamental principles of justice) *with Mathes v. Pierpont*, 725 F.2d 77 (8th Cir. 1984) (after Oklahoma released detainer for unexplained reasons, seven year delay in seeking to have defendant serve remainder of his sentence did not give rise to substantive due process violation).

The U.S. Supreme Court has never adopted the waiver of jurisdiction theory employed by the Fifth Circuit in *Shields v. Beto*. In addition, as the Fourth Circuit noted in *Hawkins v. Freeman*, 195 F.3d 732, 743-45 (6th Cir. 1999), a waiver of jurisdiction theory based on gross negligence is inconsistent with the Supreme Court's rulings that a substantive due process violation requires arbitrary and oppressive conduct which is so egregious that it "shocks the conscience." *See County of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998); *Collins v. City of Harker Heights*, 503 U.S. 115, 126 (1992). No such finding can be made in this case.[8]

At a minimum, however, under the specific facts in this case – where Maine failed to pursue its November 12, 2009 motion for almost nine years, where in the meantime Sanborn served his sentences for the offenses he committed in New Hampshire and was released on parole, and where as part of his supervision on parole Sanborn has since engaged in treatment for substance abuse and obtained a job[9] – it would make no sense to subject Sanborn to a potential revocation for offenses that occurred in 2009, 2014, and 2015.

---

[8] The 6th Amendment's speedy trial provision does not apply to probation revocation proceedings. *United States v. Tippens*, 39 F.3d 88, 89 (5th Cir. 1994). *See Carchman v. Nash*, 473 U.S. 716, 731 n.10 (1985). However, the considerations underlying that provision are relevant here.

[9] See August 7, 2018 letter of Elsa Johnson, LCMHC, annexed to defendant's August 23, 2018 motion to dismiss. The court understands that both Sanborn's NH parole officer and his Maine probation officer have reservations about his current performance. Those reservations have not, however, been significant enough to lead to any parole revocation proceedings in New Hampshire.

Indeed, to revoke any portion of Sanborn's probation at this time would violate the spirit if not the letter of 17-A M.R.S. § 1256(8), which precludes a court from imposing a sentence that would result in a defendant being returned to custody after being released from confinement on probation.

Sanborn lives in New Hampshire, and he is under supervision in New Hampshire. It is not clear whether his continued Maine probation serves any purpose. Accordingly, while defendant's motion to dismiss the pending probation motions is denied, a further hearing should be held to determine whether, if there are admissions or findings of violations, no further sanction should be ordered and also to consider whether Sanborn's Maine probation should be terminated pursuant to 17-A M.R.S. § 1202(3).[10]

Dated: January 28, 2019

Thomas D. Warren
Justice, Superior Court

---

[10] It bears emphasis that if there were to be a hearing on the November 12, 2009 motion and if – because of the passage of time or otherwise – the State were unable to prove the violations alleged in that motion, Sanborn's probation would not be tolled pursuant to 17-A M.R.S. § 1206(7-C) and would therefore have expired in 2011, seven years prior to the filing of the second Maine probation revocation motion on July 27, 2018.