**Alphonso SANDERS, Petitioner**

v.

**PENNSYLVANIA BOARD OF PROBATION AND PAROLE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 5, 2008.

Decided Oct. 9, 2008.

James M. McClure, Asst. Public Defender, Huntingdon, for petitioner.

Arthur R. Thomas, Asst. Counsel and Victoria S. Madden, Chief Counsel, Harrisburg, for respondent.

BEFORE: PELLEGRINI, Judge, and LEAVITT, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge PELLEGRINI.

Alphonso Sanders (Sanders) petitions for review of the order of the Board of Probation and Parole (Board) denying his request for administrative relief from the Board's decision to recommit him as a technical parole violator.

On July 12, 2004, the Board released Sanders on reparole from a robbery sentence with a recalculated maximum release date of October 21, 2010. In May 2007, after his request to live with his wife in Georgia was approved, he relocated and the Georgia Parole Department supervised his parole under the terms of the Inter-

state Compact for the Supervision of Adult Offenders (Compact).[1]

The Board received an offender violation report from Georgia, dated July 26, 2007, stating that Sanders violated the conditions of his parole by failing to have a home phone installed for electronic monitoring, failing to attend a substance abuse group, and by changing his residence without first getting permission from his Parole Officer on or about July 23, 2007. On August 6, 2007, the Board issued an arrest warrant for Sanders based on the parole violations and he was arrested on August 13, 2007, by the Macon County Sheriff's Office. Sanders also signed a document on the date of his arrest entitled, "Out–of–State Waiver of Preliminary Hearing on Parole for Conditional Release Revocation and Agreement to Return," which waived and renounced the right of a preliminary hearing, waived extradition, and agreed for him to return to Pennsylvania. On September 21, 2007, Sanders also signed a waiver of a panel hearing, and a parole violation hearing was held before a Hearing Examiner (Examiner).

At the hearing, a stand-in parole agent testified that Sanders was being charged with a technical violation of Condition II of his parole, which required his approved residence to be listed and prohibited Sanders from changing his address without the written permission of the Georgia Parole Supervision Staff. The parole agent further testified that on or about July 23, 2007, a Georgia parole agent attempted to contact Sanders at his approved residence and found the residence to be abandoned and that all phone contact numbers were disconnected. The parole agent stated that Sanders was declared delinquent on July 23, 2007. She then submitted the Georgia Interstate Compact Violation Report/Offender Violation Report (Violation Report) into evidence, which stated that Sanders' residence was found to be abandoned with no furnishings or personal belongings, and that although it appeared that someone had lived there at some point, all phone numbers were disconnected. Counsel for Sanders objected to the admission of the Violation Report and the Interstate Commission for Adult Offender Supervision/Georgia Case Closure Notice (Case Closure Notice) from the Georgia parole agent as hearsay, which was overruled by the Examiner. The parole agent also admitted the Georgia "Out–of–State Waiver of Preliminary Hearing on Parole of Conditional Release Revocation and Agreement to Return" (Waiver) into evidence without objection.

Testifying on his own behalf, Sanders testified that his parole agent in Georgia went to the wrong address because he lived at 4470A Ninth Road, Macon, Georgia, but his parole agent instead went to 4470 Ninth Road, which was located behind his residence and was abandoned. Sanders further testified that when he explained to his parole agent that she went to the wrong house, she told him that it did not matter. Sanders also testified that his agent in Philadelphia knew he was having trouble with his landlord in Georgia, and that the landlord called child services telling them that Sanders did not have lights, running water or food in the house. Sanders stated that the investigator from Child Services investigated his house and realized the problems with the landlord, which prompted her to give him a list of realtors to find a new home. Sanders testified that the investigator and parole agent spoke over the phone and after-

1. The Interstate Compact for the Supervision of Adult Offenders Act is located within what is commonly known as the "Parole Act," Act of June 25, 1937, P.L. 2086, *as amended*, 61 P.S. § 321.

wards, his parole agent told him that "he was fine." (Violation Hearing Transcript, September 21, 2007, at 9.) Sanders also testified that the house he was supposed to move to was not ready, so he moved his wife and kids into a motel, and he left a note on his front door and one with his neighbor. Sanders testified that he was moving back and forth, making sure that his storage was taken, which is how he knew that the parole agent went to the wrong house because his house was still full of furnishings.

With respect to the waiver of a preliminary hearing, Sanders testified he would never sign a waiver, but his parole agent told him that it was part of his interstate compact agreement, and that he had to sign the waiver to come back and waive extradition. Despite the fact that the Waiver stated the signatory admitted to violating the conditions of his parole, Sanders testified that his parole agent told him to ignore that part of the document, that it did not matter, and that he just had to sign the waiver to come back. At the close of the parole revocation hearing, the Examiner noted that the following documents supported the record: (1) the Waiver; (2) States Exhibits 1 and 2; (3) the notice of charges from August 27, 2007; (4) the technical arrest report; (5) the supervision history report; (6) the violation report; (7) Sanders Case Closure Notice; (8) the warrant dated July 6, 2007; and (9) the summarization report.

On October 25, 2007, the Board mailed its decision to Sanders recommitting him as a technical parole violator to serve nine months backtime for violation of the parole condition prohibiting a change of residence without permission. According to

the Board's decision, the evidence relied upon included Sanders' prior admission, the parole agent's testimony, and the documented reports from the Pennsylvania Department of Probation and Parole (Department). Sanders filed a timely appeal of the Board's decision seeking administrative relief. After his request for administrative relief was denied, this appeal followed.[2]

Sanders contends the Board erred in finding that the Waiver constituted an admission that he was guilty of violating his parole when all that it admitted was probable cause of a parole violation allowing him to be returned to Pennsylvania. He also contends that the Board erred by admitting the Violation Report and Case Closure Notice into evidence over the hearsay objection. Because the Waiver only admitted that there was probable cause, not that he violated conditions of parole, and the Violation Report and Case Closure Notice were impermissible hearsay, Sanders contends the Board's decision must be reversed because there is no substantial evidence to support its decision.

When the Board, at Sanders' request, allowed his parole to be supervised by the Georgia parole officials, it did so under the Compact. As part of the Compact, the state became a member of the Interstate Commission for Adult Offender Supervision (Commission) which oversees the day-to-day activities of the compact between the states and promulgates rules to achieve the goals of the compact. When a parolee violates parole in the receiving state, Rule 5.108 of the Interstate Commission on Adult Offender Supervision

**2.** On review, we are limited to determining whether necessary findings were supported by substantial evidence, an error of law was committed, or a constitutional right of parol-

ee was violated. *McPherson v. Pennsylvania Board of Probation and Parole,* 785 A.2d 1079 (Pa.Cmwlth.2001).

Commission Rules[3] addresses how a parolee is sent back to the sending state. It provides:

(a) An offender subject to retaking for violation of conditions of supervision that may result in a revocation shall be afforded the opportunity for a probable cause hearing before a neutral and detached hearing officer in or reasonably near the place where the alleged violation occurred.

**(b) No waiver of a probable cause hearing shall be accepted unless accompanied by an admission by the offender to one or more significant violations of the terms or conditions of supervision.**

(c) A copy of a judgment of conviction regarding the conviction of a new felony offense by the offender shall be deemed conclusive proof that an offender may be retaken by a sending state without the need for further proceedings.

(d) The offender shall be entitled to the following rights at the probable cause hearing:

(1) Written notice of the alleged violation(s);

(2) Disclosure of non-privileged or non-confidential evidence regarding the alleged violation(s);

(3) The opportunity to be heard in person and to present witnesses and documentary evidence relevant to the alleged violation(s);

(4) The opportunity to confront and cross-examine adverse witnesses, unless the hearing officer determines that a risk of harm to a witness exists.

(e) The receiving state shall prepare and submit to the sending state a written report within 10 business days of the hearing that identifies the time, date and location of the hearing; lists the parties present at the hearing; and includes a clear and concise summary of the testimony taken and the evidence relied upon in rendering the decision. Any evidence or record generated during a probable cause hearing shall be forwarded to the sending state.

(f) If the hearing officer determines that there is probable cause to believe that the offender has committed the alleged violations of conditions of supervision, the receiving state shall hold the offender in custody, and the sending state shall, within 15 business days of receipt of the hearing officer's report, notify the receiving state of the decision to retake or other action to be taken.

(g) If probable cause is not established, the receiving state shall:

(1) Continue supervision if the offender is not in custody.

(2) Notify the sending state to vacate the warrant, and continue supervision upon release if the offender is in custody on the sending state's warrant.

(3) Vacate the receiving state's warrant and release the offender back to supervision within 24 hours of the hearing if the offender is in custody.

(Commission Rule 501.8, adopted November 4, 2003, *as amended,* pp. 60–61.) (Emphasis added.)

This Commission Rule allows a prisoner to confront the receiving states parole agent who is charging that a parolee violated the conditions of his parole with full access to the information to defend against the charge before sending him back to the sending state. Most relevant here, a parolee cannot waive that hearing unless he

---

**3.** Interstate Commission for Adult Offender Supervision Rules (Commission Rules), effective January 1, 2008, available at http://www. interstatecompact.org/Portals/0/library/legal/ ICAOS Rule.pdf. The specific rule can be found at pp. 60–61 at the pdf file.

or she admits to "one or more significant violations of the terms or conditions of supervision." Commission Rule 5.108(b). Presumably, holding a hearing or requiring a waiver in the receiving state is to make the Compact workable by avoiding the expense of parole agents coming to the sending state to testify. Once a preliminary hearing is held finding probable cause or a parolee has signed a waiver admitting the violations, then under the Compact, a Case Closure Notice and Violation Report are sent to the sending state. The sending state may then use that evidence to support the violation and the parolee is free to offer any explanation, which the Board may consider in deciding whether to revoke his parole or impose backtime.

We addressed the propriety of a similar procedure used in the Interstate Corrections Compact,[4] in *Fenton v. Pennsylvania Board of Probation and Parole*, 110 Pa.Cmwlth. 320, 532 A.2d 1223 (1987), which involved a challenge to the admissibility of reports from a receiving state and whether those reports constituted substantial evidence to revoke parole. In that case, parolee's Pennsylvania parole was being supervised by the New York parole authorities. The parolee was later arrested in Florida and returned to Pennsylvania where he was recommitted based on the New York "Cooperation Violation of Parole Report" (report) to serve backtime for technical violations of his parole conditions. *Id.* at 1225. He challenged the recommitment on the grounds that he was improperly denied the right to confront the witnesses who prepared the report which was submitted into evidence at his revocation hearing. Because the report was sent to Pennsylvania under the Interstate Corrections Compact, we held that it qualified as a business record and was properly admitted into evidence. In *Fenton*, we further noted:

"[A] purpose of the Interstate Corrections Compact is to afford parolees the opportunity to have their parole supervised by a state other than the paroling state. Accordingly, the reports of a supervising state, if properly signed and certified, must be given due weight in order for the Interstate Corrections Compact to have any effect."

*Id.* at 1226.

In this case, Sanders signed the Waiver, which was entered into evidence without objection, listed the violations of the conditions of his parole,[5] and expressly stated: "I admit to violation of my release as stated above." (Violation Hearing Transcript, September 21, 2007, State's Exhibit 2.) This admission alone constitutes substantial evidence for the Board to make a finding that Sanders violated his parole.

Accordingly, because the Waiver constitutes substantial evidence that Sanders violated the condition of his parole, the

---

4. Act of December 30, 1974, P.L. 1075, 61 P.S. §§ 1061–1063.

5. The Waiver included the following as violated conditions of Sanders' parole:
   Count 1—Condition 1: by failing to carry out instruction from my parole officer or other employee of the State Board of Pardons and Paroles on or about 06/28/2007 regarding marijuana use.
   Count 2—Condition 1: by failing to carry out instruction from my parole officer or other employee of the State Board of Pardons and Paroles on or about 6/28/2007 regarding having a home phone installed for electronic monitoring.
   Count 3—Condition 4: by failing to follow through with the recommendation of a substance abuse counselor.
   Count 4—Condition 4: by changing my residence without first getting permission from my Parole officer on or about 7/23/2007. (Violation Hearing Transcript, September 21, 2007, State's Exhibit 2.)

Board's order revoking his parole is affirmed.

## ORDER

AND NOW, this 9th day of October, 2008, the order of the Board, dated April 7, 2008, is affirmed.