# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Christopher Iwanicki,                  :
           Petitioner        :
                           :
           v.                :    No. 97 C.D. 2024
                           :    Submitted: March 4, 2025
Pennsylvania Parole Board,             :
           Respondent        :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
                HONORABLE STACY WALLACE, Judge (P.)
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION BY
PRESIDENT JUDGE COHN JUBELIRER        FILED: June 4, 2025


Christopher Iwanicki (Iwanicki), pro se, petitions for review of a determination of the Pennsylvania Parole Board (Board),[1] dated January 9, 2024. The Board affirmed a panel decision recommitting Iwanicki as a convicted parole violator (CPV) to serve a period of 12 months and recalculated Iwanicki's maximum term expiry to December 20, 2034, pursuant to the Prisons and Parole Code (Code), 61 Pa.C.S. §§ 101-7301. After careful review, we affirm.

---

[1] The Pennsylvania Board of Probation and Parole was renamed the Pennsylvania Parole Board in 2019. *See* Sections 15, 16, and 16.1 of the Act of December 18, 2019, P.L. 776, No. 115; *see also* Sections 6101 and 6111(a) of the Prisons and Parole Code, *as amended*, 61 Pa.C.S. §§ 6101, 6111(a). This Court uses "Board" to refer to both the Pennsylvania Parole Board and its predecessor, the Pennsylvania Board of Probation and Parole.

## I. BACKGROUND

### *Original Sentence and Parole Violations*

Iwanicki is currently incarcerated at the State Correctional Institution at Laurel Highlands. Iwanicki was originally sentenced on July 15, 2004, to an aggregated term of 6 years, 8 months to 25 years (original sentence) in prison, with a maximum term expiry of April 27, 2029. (Certified Record (C.R.) at 3.) By the Notice of Board Decision recorded on June 26, 2014, the Board paroled Iwanicki and transferred supervision to the State of Georgia pursuant to the Interstate Compact for Adult Offender Supervision (Compact) and Interstate Commission for Adult Offender Supervision (Interstate Commission) (together, ICAOS),[2] and the Interstate Compact for the Supervision of Adult Offenders Act (Interstate Supervision Act).[3] (*Id.* at 13-19.)

On November 5, 2015, Iwanicki was arrested in Columbia County, Georgia, and charged with theft by receiving stolen property. (*Id.* at 44.) Iwanicki was convicted of this offense on May 19, 2016, by a Georgia state court and was sentenced to 5 years' probation. (*Id.*) On December 9, 2016, the Board issued a warrant for Iwanicki to be taken into custody and returned to the Commonwealth as a CPV. (*Id.*) Iwanicki failed to report. (*Id.*) On December 12, 2016, Iwanicki was declared delinquent. (*Id.* at 20, 44.)

---

[2] The ICAOS "guide[s] the transfer of supervised individuals in a manner that promotes effective supervision strategies consistent with public safety, accountability, and victims' rights." ICAOS Mission Statement, available here: https://interstatecompact.org/about (last visited June 4, 2025). The text of the ICAOS is available here: https://interstatecompact.org/sites/default/files/pdf/legal/Compact_Preamble.pdf (last visited June 4, 2025).

[3] The Interstate Supervision Act serves as the ratifying legislation for the Commonwealth's membership in the ICAOS, 61 Pa.C.S. §§ 7111-7115.

Iwanicki's location was unknown to authorities until Iwanicki was arrested on December 21, 2016, in Richmond County, Georgia. (*Id*. at 44.) Iwanicki was then convicted by a state court in Richmond County for "[d]isobedience of a [t]raffic [c]ontrol [d]evice, [driving under the influence (DUI)] [a]lcohol ([Misdemeanor]), cancelled [l]icense ([Misdemeanor]), [and] [o]bstruction of a [l]aw [e]nforcement [o]fficer ([Misdemeanor])." (*Id*.) On May 22, 2017, the Board recommitted Iwanicki as a CPV to serve 18 months' backtime[4] with a recalculated maximum term expiry of June 24, 2031. (*Id*. at 23-24.)

On April 23, 2019, Iwanicki was reparoled, and the supervision of Iwanicki's parole was again transferred to Georgia pursuant to the ICAOS and the Interstate Supervision Act. (*Id*. at 29-32, 166.) As part of the reparole process, Iwanicki signed a document titled "Conditions Governing Parole/Reparole" (parole conditions), in which Iwanicki acknowledged and agreed to the following conditions:

> If I am ever charged with a parole violation arising out of my conduct while in a jurisdiction other than the Commonwealth of Pennsylvania, the revocation of my parole for that violation may be based solely on documentary evidence and I hereby waive any right to confront or cross-examine any person who prepared any such documentary evidence or who supplied [i]nformation used in its preparation;

---

[4] The term "backtime" is defined as "[t]he unserved part of a prison sentence which a convict would have been compelled to serve if the convict had not been paroled." 37 Pa. Code § 61.1. This Court has opined:

> "[B]acktime" is that part of an existing judicially-imposed sentence that the Board directs a parolee to complete, following a civil administrative hearing and a finding that the parolee violated the terms and conditions of parole, which time must be served before the parolee may again be eligible to be considered for a grant of parole.

*Hughes v. Pa. Bd. of Prob. & Parole*, 179 A.3d 117, 122 (Pa. Cmwlth. 2018).

3

> I expressly waive extradition to the Commonwealth of Pennsylvania from any jurisdiction in or outside of the United States, where I may be found, and I shall not contest any effort by any jurisdiction to return me to the United States or to the Commonwealth of Pennsylvania; and
>
> I expressly consent to the search of my person, property and residence, without a warrant by agents of the [] Board. . . . Any items, in the possession of which constitutes a violation of parole/reparole shall be subject to seizure, and may be used as evidence in the parole revocation process.

(*Id*. at 30.)

Less than one year later, Iwanicki was again arrested in Columbia County, Georgia, and, on December 21, 2021, was convicted of battery-family violence (Misdemeanor) and obstruction of an officer (Felony). (*Id*. at 39-40, 45.) For these new convictions, Iwanicki was sentenced to "a total of 5 years with the first 20 months to be served in confinement and the remainder to be served on probation." (*Id*. at 45.) On December 23, 2021, Iwanicki "was transferred to the Toombs County[, Georgia] Correctional Facility . . . due to open criminal charges for 3 counts [of] Filing False Lien/Document[s] Against a Public Official," for which Iwanicki was subsequently convicted and sentenced to 10 years of probation for each count to run concurrently. (*Id*.)

On September 15, 2022, the Board received a violation report from Georgia (violation report), indicating that Iwanicki's retaking was required because of a new felony conviction. (*Id*. at 86-87.) On October 19, 2022, the Pennsylvania Department of Corrections (DOC) issued a warrant, and Iwanicki was returned to the Commonwealth's custody and arrived at the State Correctional Institution at Smithfield (SCI-Smithfield). (*Id*. at 33, 45.)

4

*Panel Revocation Hearing and Recommitment Decision*

On February 21, 2023, the Board held a panel revocation hearing where Iwanicki was represented by counsel. (*Id*. at 37, 46.) The Board took testimony from Parole Agent Rebecca Pirrello (Parole Agent), who recounted Iwanicki's Georgia convictions and offered into evidence a sentencing packet and new criminal conviction packet outlining same. (*Id*. at 53-55.) Iwanicki did not contest the convictions or object to any of the evidence proffered by Parole Agent. (*Id*. at 52, 55-56.) Instead, Iwanicki submitted a packet of dispositional information. (*Id*. at 57-60, 96-116.)

On February 26, 2023, following the revocation hearing, the panel recommended that Iwanicki be recommitted as a CPV and be denied credit for the time Iwanicki was at liberty on parole. (*Id*. at 117-27.) On March 22, 2023, the panel issued its decision, recommitting Iwanicki for a period of 12 months for the Georgia convictions and recalculating the maximum term expiry for the original sentence to December 20, 2034. (*Id*. at 131-32.)

On March 31, 2023, Iwanicki sought administrative review of the panel recommitment decision. On December 1, 2023, Iwanicki filed a second administrative appeal, again seeking the Board's review of the March 22, 2023 decision. (*See* C.R. at 159-60.)[5]

*Administrative Appeal and Board Determination*

On January 9, 2024, the Board denied Iwanicki's administrative appeal and affirmed the panel's recommitment decision. (Board Determination, C.R. at 165-

---

[5] Iwanicki filed two administrative remedies forms related to the Board Decision dated March 22, 2023. (C.R. at 149, 159-60.) Through the second administrative remedies form, dated December 1, 2023, Iwanicki asserted that the Board held a "second and subsequent hearing[] to [redetermine the March 22, 2023[] Final [] Determination." (*Id*. at 159-60.)

67.) The Board first considered Iwanicki's challenge to the maximum term recalculation, determining that the recalculation did not violate Iwanicki's constitutional rights. (*Id.* at 165.) The Board reasoned that under Section 6138(a)(2) of the Code, 61 Pa.C.S. § 6138(a)(2), "[t]he Board has the statutory authority to recalculate the max[imum] dates of [a CPV] to reflect that the[ CPV] received no credit for the time spent at liberty on parole," and that Iwanicki was advised "of this potential penalty on the parole conditions [document Iwanicki] signed on April 22, 2019." (*Id.*) The Board further reasoned that "the ability to challenge the recalculation decision after it is imposed satisfies [Iwanicki's] due process rights." (*Id.*) On this issue, the Board determined that "the recalculation of [the] max[imum] date does not violate any constitutional provisions, including [d]ouble [j]eopardy." (*Id.* (citing *Young v. Commonwealth*, 409 A.2d 843 (Pa. 1979)).)

The Board next determined that the recommitment period of 12 months was appropriate, reasoning that

> [t]he presumptive range assigned to [Iwanicki's] offenses are as follows, based on 37 Pa. Code §§ 75.1-75.2:
>
> • Obstruction of an Officer = 6 to 12 months
> • Battery - Family Violence = 9 to 15 months
> • False Liens (3 counts) = 6 to 12 months for a total of 36 months
>
> For a total range of 9 to 63 months.

(C.R. at 166.) Thus, the Board found that "the decision for [Iwanicki] to serve 12 months falls within the presumptive range and is not subject to challenge." (*Id.* (citing *Smith v. Pa. Bd. of Prob. & Parole*, 574 A.2d 558 (Pa. 1990)).)

Finally, through recounting Iwanicki's conviction and parole violation history, the Board determined that Iwanicki "still had a total of 4[,]445 days

6

remaining on [the original] sentence based on [Iwanicki's] recommitment." (*Id*. at 166.) The Board concluded that

> [t]he [] Code provides that [CPVs] who are paroled from a state correctional institution and then receive another sentence to be served in another state must serve the other states' sentence first[,] 61 Pa. C.S. § 6138(a)(5). However, that provision does not take effect until the parolee is recommitted as a [CPV]. Thus, [Iwanicki] did not become available to commence service of [the] original sentence until October 19, 2022, when the DOC lodged their detainer. Adding 4[,]445 days to that date yields a new maximum sentence date of December 20, 2034.

(*Id*. at 167.) Accordingly, the Board affirmed the panel's recommitment decision. (*Id*.) Iwanicki now petitions this Court for review.[6]

## II. DISCUSSION[7]

Iwanicki effectively raises four issues on appeal, which we have paraphrased: (1) whether the Board retained jurisdiction to issue a warrant and retake Iwanicki as a CPV after a subsequent conviction while under the supervision of Georgia; (2)

---

[6] Appointed counsel for Iwanicki filed a *Turner* Letter and Motion to Withdraw Appearance as Counsel on April 15, 2024. By letter received April 16, 2024, Iwanicki informed this Court that appointed counsel was terminated and Iwanicki would be proceeding pro se. By order dated April 22, 2024, this Court dismissed appointed counsel's *Turner* Letter and Motion to Withdraw Appearance as Counsel, and struck appointed counsel from the record. Iwanicki also filed with this Court a document titled "Amended Complaint Due to Exculpatory Evidence of Continual Constitutional Injury Upon Plaintiff by the Pennsylvania Parole Board," and a document titled "Amendment of One (1) Constitutional Claim of Ex Post Facto Violations as Exhibit 2 to Amended Complaint." By order dated December 11, 2024, this Court struck those filings as unauthorized.

[7] "This Court's review determines whether the [] Board's adjudication is supported by substantial evidence, whether an error of law has been committed, or whether constitutional rights have been violated." *Soto v. Pa. Parole Bd.*, 311 A.3d 1260, 1262 n.1 (Pa. Cmwlth. 2024) (citing *Moroz v. Pa. Bd. of Prob. & Parole*, 660 A.2d 131, 132 (Pa. Cmwlth. 1995)). "When presented with a question of law, our standard of review is *de novo*, and our scope of review is plenary." *Id*. (emphasis in original) (citing *Pittman v. Pa. Bd. of Prob. & Parole*, 159 A.3d 466, 473 (Pa. 2017)). "Where the law grants the Parole Board discretion, we review for an abuse of discretion." *Id*. (citation omitted).

whether the absence of a preliminary hearing or detention hearing upon Iwanicki's retaking by the Board violated Iwanicki's due process rights; (3) whether the Board committed an *ex post facto* violation by using evidence from Iwanicki's Georgia conviction at the revocation hearing and the hearing wherein Iwanicki was denied parole; and (4) whether the Board erred in rejecting Iwanicki's administrative remedies form as untimely.[8]  We address each issue in turn.

### *Jurisdiction of Sending State Under the ICAOS*

We begin by recognizing that our General Assembly joined the ICAOS with the aim of facilitating cooperation amongst our sister states over matters of probation and parole.  Our General Assembly, in enacting the Interstate Supervision Act,[9] 61 Pa.C.S. §§ 7111-7115, incorporated the ICAOS preamble, which explained:

> The compacting states to this Interstate Compact recognize that each state is responsible for the supervision of adult offenders in the community who are authorized pursuant to the Bylaws and Rules of this compact to travel across state lines both to and from each compacting state in such a manner as to track the location of offenders, transfer supervision authority in an orderly and efficient manner, and when necessary return offenders to the originating jurisdictions . . . . It is the purpose of this compact and the Interstate Commission created hereunder, through means of joint and cooperative action among the compacting states: to provide the framework for the promotion of public safety and protect the rights of victims through the control and regulation of the interstate movement of offenders in the community; to provide for the effective tracking, supervision, and rehabilitation of

---

[8] "[A]lthough it is not this Court's function to develop a party's arguments, this Court generally construes *pro se* filings liberally." *Bowen v. Unemployment Comp. Bd. of Rev.*, 311 A.3d 641, 646 n.6 (Pa. Cmwlth. 2024) (emphasis in original) (citation omitted).

[9] "Compacts have the characteristics of contracts because the enactment of the compact terms as part of an enabling statute by one state is viewed as an offer.  The offer may be accepted through the enactment of statutes, including the same compact terms by another state." *Aveline v. Pa. Bd. of Prob. & Parole*, 729 A.2d 1254, 1257 n.10 (Pa. Cmwlth. 1999) (citation omitted).  "As with other contracts, the Contract Clause of the United States Constitution[, U.S. CONST. art. I, § 10, cl. 1,] protects compacts from impairment by the states." *Id.* (citation omitted).

these offenders by the sending and receiving states; and to equitably distribute the costs, benefits and obligations of the compact among the compacting states . . . . **The compacting states recognize that there is no "right" of any offender to live in another state and that duly accredited officers of a sending state may at all times enter a receiving state and there apprehend and retake any offender under supervision subject to the provisions of this compact and Bylaws and Rules promulgated hereunder**.

Section 7112, art. I, of the Interstate Supervision Act, 61 Pa.C.S. § 7112 (emphasis added).[10]  Likewise, the administrative provisions of the Interstate Supervision Act mandate that "[t]he contracting [or receiving] state must adhere to this Commonwealth's laws regarding the interstate compact."  Section 7122(d) of the Interstate Supervision Act, 61 Pa.C.S. § 7122(d); *see also Commonwealth v. Castaneira*, 328 A.3d 1028, 1033 (Pa. Super. 2024) ("Th[is] section declares that other states must comply with Pennsylvania's laws with respect to transferred supervision under the ICAOS.").[11]

---

[10] Article I, Section 10, Clause 3, of the United States Constitution, U.S. CONST. art. I, § 10, cl. 3, known as the Compacts Clause, provides, in relevant part, that "[n]o State shall, without the Consent of Congress . . . enter into any Agreement or Compact with another State, or with a foreign Power."  Pursuant to Section 112 of the Crime Control Consent Act of 1934, 4 U.S.C. § 112, the United States Congress provided advance consent to the states to enter into the ICAOS, stating, in pertinent part:

> (a) The consent of Congress is hereby given to any two or more States to enter into agreements or compacts for cooperative effort and mutual assistance in the prevention of crime and in the enforcement of their respective criminal laws and policies, and to establish such agencies, joint or otherwise, as they may deem desirable for making effective such agreements and compacts.

4 U.S.C. § 112(a); *see also Doe v. Pa. Bd. of Prob. & Parole*, 513 F.3d 95, 99 n.1 (3d Cir. 2008) (recognizing that the ICAOS was approved by Congress through 4 U.S.C. § 112).

[11] In general, "Superior Court decisions 'are not binding on this Court, but they offer persuasive precedent where they address analogous issues.'" *Pa. State Police v. Madden*, 284 A.3d 272, 278 n.13 (Pa. Cmwlth. 2022) (citation omitted).

9

The Board is the independent administrative agency charged with "granting and revoking paroles to certain offenders within th[e] Commonwealth." 61 Pa.C.S. § 6111(a). Under Section 6132(a) of the Code, 61 Pa.C.S. § 6132(a), "[t]he [B]oard shall have exclusive power . . . . [t]o parole and reparole, commit and recommit for violations of parole and to discharge from parole all persons sentenced by any court at any time to imprisonment in a State correctional institution." *See Fross v. County of Allegheny*, 20 A.3d 1193, 1196 n.3 (Pa. 2011) (recognizing that the Board possesses this exclusive authority). "Furthermore, while parole is a provisional release, it is in legal effect a continuance of imprisonment," and a parolee "is still in the legal custody of the warden of the institution from which [the parolee] was paroled and under [the warden's] control until the expiration of the term of [] sentence." *Johnson v. Bookbinder*, 247 A.2d 644, 646 (Pa. Super. 1968) (citations omitted).[12] Our Supreme Court subsequently reaffirmed this aspect of the modern parole system, holding that "[a]n offender on state parole is in the legal custody of the Board until that offender completes the service of [their] maximum sentence or until the Board recommits the offender as a parole violator." *Martin v. Pa. Bd. of Prob. & Parole*, 840 A.2d 299, 303 (Pa. 2003) (citation omitted).

In addition, the ICAOS and the Interstate Supervision Act permit the promulgation of "rules to achieve the purpose of [the ICAOS]." 61 Pa.C.S. § 7112, art. I. "As part of the [ICAOS], the [Commonwealth and Georgia both] became []

---

[12] Our Supreme Court has opined:

[P]arole is not an act of clemency but a penological measure for the disciplinary treatment of prisoners who seem capable of rehabilitation outside of prison walls; it does not set aside o[r] affect the sentence and the convict remains in the legal custody of the state and under the control of its agents, subject at any time for breach of condition, to be returned to the penal institution.

*Sparks v. Russell*, 169 A.2d 884, 885 (Pa. 1961) (citation omitted).

10

member[s] of the Interstate Commission [] which oversees the day-to-day activities of the [ICAOS] between the states and promulgates rules to achieve the goals of the [ICAOS]." *Sanders v. Pa. Bd. of Prob. & Parole*, 958 A.2d 582, 584 (Pa. Cmwlth. 2008).[13]  Under Article II of the ICAOS and the Interstate Supervision Act, the term "'[r]ules' means acts of the Interstate Commission, duly promulgated pursuant to Article VIII of [the ICAOS], substantially affecting interested parties in addition to the Interstate Commission, **which shall have the force and effect of law in the compacting states**."  Section 7112, article II, of the Interstate Supervision Act, 61 Pa.C.S. § 7112, art. II (emphasis added).  Likewise, Article XIV of the ICAOS and the Interstate Supervision Act provides that "[a]ll lawful actions of the Interstate

---

[13] In addition, and in line with the statutory purpose announced in the Interstate Supervision Act, guidance issued by the Interstate Commission, while not binding on this Court, may be persuasive.  Specifically, ICAOS Advisory Opinion 2-2005 illustrates:

> **In seeking to have supervision transferred to another state, the offender accepts that a sending state can retake**, that no formal extradition proceed[ings] are required, and that he or she is subject to the same type of supervision as other offenders in the receiving state . . . . The offender accepts probation or parole on a conditional basis – fulfilling the requirements imposed upon him or her.  **Failure to comply with these requirements, whether in the sending state, receiving state**, or third party asylum state, **requires state officials** to take all reasonable and necessary measures to ensure compliance or **to return the offender to the same status held before probation or parole**.

ICAOS Advisory Opinion 2-2005 (emphasis added).  This guidance further instructs that "[i]n supervising out-of-state offenders, **authorities in a receiving state possess a dual status**.  First, they act to supervise such an offender under the same standards as any in-state offender.  Second**, they act as agents for the sending state to supervise and effectuate the purposes of the offender's supervision**."  *Id*. (emphasis added); *see also Castaneira*, 328 A.3d at 1034 (noting that the Superior Court's "position [was] also supported by advisory opinions promulgated by the Interstate Commission" and finding ICAOS Advisory Opinion 2-2005 persuasive).  ICAOS Advisory Opinion 2-2005 is available here: https://interstatecompact.org/advisory-opinions/2-2005 (last accessed June 4, 2025); *See, e.g., advisory opinion*, BLACK'S LAW DICTIONARY ("A nonbinding statement by a court of its interpretation of the law on a matter submitted for that purpose.") (12th ed. 2024).

11

Commission, including all Rules and Bylaws promulgated by the Interstate Commission, **are binding upon the Compacting States**." Section 7112, article XIV, of the Interstate Supervision Act, 61 Pa.C.S. § 7112, art. XIV (emphasis added). Thus, in harmonizing these provisions, the ICAOS Rules are binding on compacting jurisdictions and have the force and effect of law on this Commonwealth and Georgia.[14]

Pursuant to ICAOS Rule 5.102, which governs the mandatory retaking of a supervised individual for a new felony or new violent crime conviction:

> (a) **Upon a request from the receiving state, a sending state shall retake a supervised individual from the receiving state** or a subsequent receiving state **after the individual's conviction** for a new felony offense or new violent crime and:
>
> 1. completion of a term of incarceration for that conviction; or
> 2. placement under supervision for that felony or violent crime offense.
>
> (b) When a sending state is required to retake a supervised individual, the sending state shall issue a warrant no later than 15 business days and, upon apprehension, file a detainer with the holding facility where the individual is in custody.

ICAOS Rule 5.102 (emphasis added).[15] In other words, ICAOS Rule 5.102 imputes a mandatory obligation on the sending state (when requested by the receiving state)

---

[14] *See, e.g.*, *Scott v. Commonwealth of Virginia*, 676 S.E.2d 343, 346 (Va. Ct. App. 2009) ("The ICAOS Rules are binding in the compacting states and thus have the force and effect of law."); *Ramirez v. Superior Ct. of Imperial Cnty.*, 223 Cal.Rptr.3d 536, 542 (Cal. Ct. App. 2017) ("The ICAOS rules have the force and effect of statutory law and are binding on the compacting states."); *Aveline*, 729 A.2d at 1259 ("If Pennsylvania participates in [an interstate commission or a]ssociation, as authorized by . . . [a c]ompact, . . . the Board may be bound by the [commission's or a]ssociation's regulations and may have [] an obligation to supervise . . . .").

[15] ICAOS Rule 5.102 is available here: https://interstatecompact.org/icaos-rules/chapter/ch5/rule-5-102 (last accessed June 4, 2025).

to retake a supervised individual when the individual is convicted of a new felony or violent crime offense and has either completed the sentence or been placed on probation for the new conviction in the receiving state. ICAOS Rule 5.102(a). If such circumstances occur, the sending state is further required to issue a warrant for retaking of the supervised individual within the applicable time period. ICAOS Rule 5.102(b).[16]

While there is a dearth of case law in Pennsylvania interpreting the Interstate Supervision Act and the ICAOS, we conclude that the Board's jurisdiction over parolees under the supervision of another state is clear. We reach this conclusion based on an examination of our jurisprudence prior to the enactment of the Interstate Supervision Act and the Commonwealth's membership in the ICAOS, and further

---

[16] Section 4.3 of the ICAOS Bench Book (Bench Book), issued by the Interstate Commission, discusses the sending state's ability to retake a supervised individual and applicable exceptions thereto, stating:

> As previously noted, Article I of ICAOS authorizes officers from a sending state to enter a receiving state, or any state where a supervised individual has absconded, for the purpose of retaking. Except for limited exceptions, the decision to retake lies solely at the discretion of the sending state. See [ICAOS] *Rule 5.101(a)*. However, if a supervised individual faces charges for a new offense in the receiving state, the sending state may not retake the individual without prior consent from receiving state authorities until the criminal charges are dismissed, the sentence is satisfied, or the supervised individual is released on supervision. See [ICAOS] *Rule 5.101-1*.

> Several exceptions limit the sending state's discretion for retaking a supervised individual. These exceptions, invoked by a receiving state, require retaking by the sending state when supervision is no longer feasible. First, **a sending state must retake a supervised individual upon the request of the receiving state or a subsequent receiving state if the individual has been convicted of a felony offense or violent crime**. See [ICAOS] *Rule 1.101* and *Rule 5.102*.

ICAOS Bench Book § 4.3 (bold added) (emphasis in original). The ICAOS Bench Book is available here: https://interstatecompact.org/bench-book (last accessed June 4, 2025).

13

based on the binding nature of the ICAOS Rules on the Commonwealth. *See Castaneira*, 328 A.3d at 1031 (recently "observ[ing] that there has been minimal prior interpretation of the [ICAOS or Interstate Supervision Act] by Pennsylvania courts").[17]

For example, in *Wolfe v. Pennsylvania Board of Probation and Parole*, 558 A.2d 600 (Pa. Cmwlth. 1989), we affirmed the Board's denial of administrative relief from an order recommitting a parolee as a CPV for offenses that occurred during supervision in another state. The parolee was released on parole, and parole supervision was transferred to the State of Maryland, where the parolee committed various offenses and was ultimately convicted in that jurisdiction. *Id*. at 601. The Board issued a warrant for the parolee and a Maryland court, after releasing the parolee on bail, entered a "nolle prosequi (nolle pros)." *Id*.[18] This disposition caused the Board to forward a Governor's warrant to the State of Maryland, where the parolee was rearrested, again released on bail, and then failed to appear for multiple hearings. *Id*. The parolee was then arrested for additional offenses committed in the State of Florida, the Board issued another warrant, and the parolee was returned to Pennsylvania and recommitted for the Maryland convictions. *Id*.

Before this Court, the parolee in *Wolfe* argued that the Board lost jurisdiction over the parolee because the Board did not send agents to attend an extradition hearing, and the Board purportedly did not pursue its warrant issued for the parolee.

---

[17] Under ICAOS Rule 4.102, which governs the duration of supervision in a receiving state, "[a] receiving state shall supervise individuals transferred under the interstate compact for a length of time determined by the sending state." Further, the ICAOS Bench Book, through interpreting ICAOS Rule 4.102, notes that "[t]herefore, **the duration of supervision is solely within the jurisdiction of the sending state, leaving officials in the receiving state with minimal discretion in this regard**." ICAOS Bench Book § 3.4.1 (emphasis added).

[18] *See, e.g., nolle prosequi*, BLACK'S LAW DICTIONARY ("A legal notice that a lawsuit or prosecution has been abandoned.") (12th ed. 2024).

*Id.* On review, we considered a former penal statute governing interstate parole compacts, reasoning that the former statute "pertaining to interstate parole compacts provides that officers of a sending state may at all times enter a receiving state and retake [a] person on parole, *without formalities* other than establishing their own authority and the identity of the person taken." *Id.* at 601-02 (emphasis in original) (citation omitted).[19] Based on the language of the former penal statute, we concluded that "[g]iven the minimal requirements of the [applicable] interstate compact, we hold that the [receiving state's] entry of a nolle pros[] order was insufficient to divest the Board of jurisdiction." *Id.* at 602.

On appeal, Iwanicki first argues that "PA State Law [] 61 Pa.C.S. § 7112 was transformed into Federal Law pursuant to 4 U.S.C. § 112, thereby triggering Federal Constitutional Protections and Guarantees." (Iwanicki's Brief (Br.) at 9 (citing *Cuyler v. Adams*, 449 U.S. 433, 440 (1981)).) Through this argument, Iwanicki essentially claims that the Board lacked the authority to recommit Iwanicki for parole violations that did not occur in Pennsylvania, but occurred in a different jurisdiction because Iwanicki's parole supervision was transferred to Georgia under the ICAOS. In response, the Board contends that it had proper jurisdiction to issue a warrant to authorities in Georgia for Iwanicki's arrest pursuant to the ICAOS. (Board's Br. at 10 (citing *Wolfe*, 558 A.2d 600).) Specifically, the Board asserts that based on Iwanicki's May 19, 2016, "convict[ion] in Columbia County Superior Court for theft by receiving stolen property[,]" under ICAOS Rule 3.109(b), "[s]tates

<hr/>

[19] The interstate compact we considered in *Wolfe* was the predecessor to the ICAOS, entitled the Interstate Compact for the Supervision of Parolees and Probationers. However, "[o]n June 19, 2002, the Interstate Compact for the Supervision of Parolees and Probationers was repealed and replaced by the [ICAOS], which provides for the 'controlled movement of adult parolees and probationers across state lines.'" *Doe*, 513 F.3d at 99 n.1 (citation omitted); *see also* Act of June 25, 1937, P.L. 2086, *as amended*, 61 P.S. § 321, *repealed and replaced by*, Act of June 19, 2002, P.L. 377, No. 56, § 5.

that are party to this compact waive all legal requirements to the extradition of offenders who are fugitives from justice" and pursuant to the violation report the Board received from Georgia, the Board was required to retake Iwanicki due to the new felony conviction. (Board's Br. at 10.) Similarly, the Board asserts that the "ICAOS explicitly mandates that each state must adhere to the laws of the sending state, including enforcement of parole violations." (*Id.* at 11-12 (citing 61 Pa.C.S. § 7122).) Thus, according to the Board, it "retains authority over [Iwanicki], while Georgia assumes a supervisory role." (Board's Br. at 12.)

Here, the Board not only had authority to retake Iwanicki upon the new felony conviction and Iwanicki's release on probation, but it was expressly required to issue a warrant for Iwanicki's retaking and return to the Commonwealth when Georgia transmitted the violation report indicating that retaking was mandatory in light of the new felony conviction. While reparoled and under the supervision of Georgia, Iwanicki was arrested for felony and misdemeanor charges and was convicted, receiving a 20-month confinement term and probation for the remainder of the sentence. (C.R. at 39-40, 45.) Following these convictions, Iwanicki was convicted of three additional felonies and was sentenced to an additional 10 years of probation for each count to run concurrently. (*Id.* at 34, 45.)

On September 15, 2022, Georgia transmitted the violation report to the Board. (*Id.* at 86-87.) The violation report, formally titled "Violation Report Requiring Retaking," stated that the type of violation Iwanicki committed was a new felony offense and indicated that the Commonwealth's "retaking obligation" was mandatory. (*Id.* at 86.) In addition, the violation report indicated that a warrant was requested from the Commonwealth and stated that Iwanicki was "currently under

16

probation supervision for [] Georgia [and that Iwanicki was] not in custody." (*Id*. at 86-87.)

In other words, the requisite circumstances under ICAOS Rule 5.102 occurred. Iwanicki was convicted of multiple felony offenses, and was then released on probation by Georgia, the receiving state. Georgia, through the violation report, then formally requested that the Commonwealth issue a warrant and retake Iwanicki. Thus, the Board's mandatory obligation to retake and return Iwanicki to the Commonwealth as a CPV was triggered. *See* ICAOS Rule 5.102; ICAOS Bench Book § 4.3.

In addition, notwithstanding the Commonwealth's mandatory obligation to retake Iwanicki under the ICAOS, to the extent Iwanicki challenges the Commonwealth's authority to retake him, without formal extradition proceedings, Iwanicki waived any challenge to extradition through the parole conditions Iwanicki executed prior to being reparoled. Specifically, the parole conditions provided that Iwanicki

> expressly waive[d] extradition to the Commonwealth of Pennsylvania from any jurisdiction in or outside of the United States, where [Iwanicki] may be found, and [Iwanicki] shall not contest any effort by any jurisdiction to return [Iwanicki] to the United States or to the Commonwealth of Pennsylvania.

(C.R. at 30); *see also Commonwealth v. Green*, 581 A.2d 544, 557 (Pa. 1990) ("[A] waiver of extradition may occur as a condition to parole or probation.").

Moreover, to the extent Iwanicki challenges the Board's jurisdiction over reparoled offenders under the supervision of another state, we conclude that this argument lacks merit. Similar to *Wolfe*, the Board never "lost" jurisdiction over Iwanicki when parole supervision was transferred to Georgia pursuant to the ICAOS.

17

*See* ICAOS Advisory Opinion 2-2005 ("a receiving state possess[es] a dual status. First, they act to supervise such an offender under the same standards as any in-state offender. Second, **they act as agents for the sending state** to supervise and effectuate the purposes of the offender's supervision") (emphasis added). To be clear, the receiving state acts in a supervisory role, monitoring and supervising a transferred offender at the behest of the sending state. In other words, the Board's jurisdiction over Iwanicki was never "divested" when Iwanicki's parole supervision was transferred to Georgia, and the Board retained, at all times, authority over the terms of Iwanicki's parole and the ability to retake Iwanicki as a CPV. *See Wolfe*, 558 A.2d at 602.

In sum, under the ICAOS, the Board was required to issue a warrant and retake Iwanicki because of Iwanicki's new felony conviction and release on probation. *See* ICAOS Rule 5.102. Based on this mandatory obligation, the Board properly issued a warrant for Iwanicki's retaking as a CPV, at Georgia's request, and returned Iwanicki to Pennsylvania for revocation and recommitment proceedings. Therefore, the Board did not lack jurisdiction over Iwanicki. Accordingly, we discern no error in the Board's exercise of its authority under the Code, or the Board's satisfaction of its mandatory obligations under the ICAOS, to retake Iwanicki based on a new felony conviction.

### *New Criminal Offense and Entitlement to Detention Hearing*

When a parolee is charged with a new criminal offense, pursuant to Section 71.3(9) of the Board's regulations, 37 Pa. Code § 71.3(9), the parolee is entitled to a detention hearing within 30 days. *See* 37 Pa. Code § 71.3(9) ("The Board will follow the procedures generally governing preliminary hearings contained in § 71.2(1)--(8) (relating to procedure for violation of parole conditions) in conducting detention

18

hearings, except that a detention hearing shall be held within 30 days of the parolee's detention."); *see also* 204 Pa. Code § 311.1 ("*Detention hearing.* A first-level, probable cause hearing to determine whether there is probable cause that a paroled person should be detained or returned pending disposition of a new criminal charge.") (emphasis in original). In addition, prior to recommitment as a CPV, "[i]f a parolee is confined outside the jurisdiction of the [DOC], such as confinement out-of-State . . . **the revocation hearing shall be held within 120 days of the official verification of the return of the parolee to a State correctional facility**." 37 Pa. Code § 71.4(1)(i) (emphasis added).

However, in *Commonwealth ex rel. Rambeau v. Rundle*, 314 A.2d 842 (Pa. 1973), our Supreme Court distinguished between the hearing requirements for convicted and technical parole violators, holding that "[o]f course, in the case of [CPVs], as distinguished from technical violators, no such initial hearing need be held because [a CPV's] trial[], at which the[ CPV] w[as] convicted of committing crimes while on parole, serve[s] the same purpose." Later, in *Reavis v. Pennsylvania Board of Probation and Parole*, 909 A.2d 28 (Pa. Cmwlth. 2006), this Court reconciled *Rundle*, holding:

> [A] parolee who is detained as a [CPV] is not constitutionally entitled to a detention hearing. **The purpose of the detention hearing is to determine** whether there is **probable cause** to support a charge of parole violation. **This purpose is fully served by the proceedings at which the prisoner is convicted**.

*Id*. at 35 (emphasis added).

Despite this, even if Iwanicki was entitled to a detention hearing, our jurisprudence indicates that the validity of a timely held revocation hearing is not affected by the absence of a detention hearing. In *Whittington v. Pennsylvania Board of Probation and Parole*, 404 A.2d 782 (Pa. Cmwlth. 1979), we recognized that

19

"[w]ithout the benefit of counsel it is possible that a parolee would fail to raise the issue of the timeliness of [their] detention hearing because [they] may be unaware of such time limitations." *Id*. at 783. However, we held that "[n]evertheless, the fact remains that the **failure to hold a timely detention hearing in the absence of a timely objection in no way affects the validity of a subsequent revocation hearing**." *Id*. (emphasis added). For instance, "[e]ven if [the parolee] should have received a preliminary parole revocation hearing, the subsequent final parole revocation hearing makes the issue a wrong for which there is now no remedy." *Loach v. Pa. Bd. of Prob. & Parole*, 57 A.3d 210, 213 (Pa. Cmwlth. 2012) (internal quotation marks and citation omitted).

Iwanicki contends that a preliminary hearing was not provided, thus, denying Iwanicki due process. (Iwanicki's Br. at 9-10 (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973);[20] *Morrisey v. Brewer*, 408 U.S. 471 (1972)).) In other words, according to Iwanicki, the Commonwealth denied Iwanicki due process by not holding a *Gagnon I* hearing. In response, the Board argues that Iwanicki was not denied due process due to the absence of a preliminary hearing because Iwanicki's reliance on *Gagnon*, 411 U.S. 778, is misplaced in that "*Gagnon* [] pertains to probation hearings rather than parole," and Iwanicki "is entitled to a detention hearing not a preliminary hearing." (Board's Br. at 13-14) (emphasis in original).

---

[20] Our Supreme Court has summarized the holding in *Gagnon*, 411 U.S. 778, as follows:

> In *Gagnon*[], 411 U.S. 778[], the United States Supreme Court held that probationers are entitled to two hearings when a violation of probation is alleged. First, a preliminary hearing [*Gagnon I*] must be held at the time of arrest and detention to discern whether the alleged violation is supported by probable cause. *Id*. at 781-82[]. Second, a more comprehensive hearing [*Gagnon II*] must be held prior to the court rendering a final revocation decision. *Id*. at 782[].

*Commonwealth v. Mayfield*, 247 A.3d 1002, 1003 n.2 (Pa. 2021) (brackets added).

20

Importantly, however, the Board admits that Iwanicki did not receive a detention hearing, but claims that "despite this error, Iwanicki is not entitled to the remedy [Iwanicki] seeks [i.e.,] [a]n order . . . for immediate release" because "despite the absence of a detention hearing, an offender who is given a timely revocation hearing may not be entitled to remedial action." (*Id*. at 15 (citing *Commonwealth v. Perry*, 385 A.2d 518 (Pa. Super. 1978)).) On this point, citing a string of cases from this Court, including *Anderson v. Pennsylvania Board of Probation and Parole,* 471 A.2d 593 (Pa. Cmwlth. 1984), *superseded by*, 37 Pa. Code § 71.2, the Board asserts this Court has repeatedly applied and upheld the Superior Court's reasoning in *Perry* and should do the same in the instant case. (Board's Br. at 16-17.)

Here, it is undisputed that Iwanicki was convicted of multiple felony offenses in Georgia, released on probation, and then returned to SCI-Smithfield on November 6, 2022. (C.R. at 33, 45.) It is further undisputed that Iwanicki's parole revocation hearing was held on February 21, 2023, well within the 120-day period required under Section 71.4(1)(i) of the Board's Regulations. (*Id*. at 37, 46.) In the context of *Rundle* and *Reavis*, Iwanicki's new felony convictions in Georgia constituted probable cause that Iwanicki did in fact commit those felony offenses, which, rendered a detention hearing superfluous. Moreover, despite not holding a detention hearing for Iwanicki, such error would not render the subsequent revocation hearing a nullity, where the Board recommitted Iwanicki as a CPV.

Thus, it would be redundant for the Board to hold a detention hearing for Iwanicki, which was, nevertheless, not constitutionally necessary because of Iwanicki's new felony convictions. *See Evans v. Pa. Parole Bd.* (Pa. Cmwlth., No. 549 C.D. 2023, filed Sept. 6, 2024), slip op. at 9 (noting that "to hold an additional detention hearing within 30 days of . . . detainer would be redundant and, pursuant

21

to *Reavis*, not constitutionally necessary").[21] Accordingly, under *Reavis* and *Whittington*, the Board was not required to hold a detention hearing for Iwanicki based on the new felony convictions and we further reject Iwanicki's argument that the revocation hearing (and Iwanicki's recommitment) should be vacated because the absence of a detention hearing did not alter the validity of the subsequent revocation hearing and recommitment decision. *See Duncan v. Pa. Bd. of Prob. & Parole* (Pa. Cmwlth., No. 2160 C.D. 2014, filed Sept. 16, 2015), slip op. at 6 ("reject[ing] [parolee] argument that the remedy for the Board's failure to conduct a detention hearing is to vacate the Board's decision to revoke [] parole").

*Use of Out-of-State Evidence at Revocation Hearing*

Pursuant to Section 71.5(b) of the Board's regulations, 37 Pa. Code § 71.5(b), authentic and accurate documentary evidence and reports may be used at a panel revocation hearing and may be credited by the panel in a subsequent recommitment decision. Specifically, Section 71.5(b) provides:

> In hearings conducted under this chapter, documentary evidence and reports, including, but not limited to, depositions, written interrogatories, affidavits, laboratory reports, business records, public records, official records and letters rogatory, may be utilized solely, if the panel or examiner is satisfied as to their authenticity, relevancy, accuracy and reliability.

37 Pa. Code § 71.5(b). In *Fenton v. Pennsylvania Board of Probation and Parole*, 532 A.2d 1223 (Pa. Cmwlth. 1987), we extended this evidentiary scope to include evidence from out-of-state jurisdictions, recognizing that the use of documentary

---

[21] Pursuant to Rule 126(b) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P 126(b), and Commonwealth Court Internal Operating Procedure Section 414(a), 210 Pa. Code § 69.414(a), unreported panel decisions of this Court issued after January 15, 2008, may be cited for their persuasive value.

evidence and reports from a supervising or receiving state may be used in revocation hearings and must be given evidentiary weight. For instance, we held that

> a purpose of the Interstate Corrections Compact[22] is to afford parolees the opportunity to have their parole supervised by a state other than the paroling state. Accordingly, **the reports of a supervising state, if properly signed and certified, must be given due weight** in order for the Interstate Corrections Compact to have any effect.

*Id*. at 1226 (emphasis added) (citation omitted).

In our more recent decision, *Sanders*, 958 A.2d 582, we addressed a similar factual situation involving the ICAOS and transferred supervision in Georgia. We rejected the argument that a parolee's waiver of a preliminary hearing, wherein the parolee admitted to the existence of probable cause of a parole violation, did not constitute an admission that the parolee was guilty of a parole violation. *Id*. at 584. Relying on *Fenton*, we reasoned that "[t]he sending state may [] use [] evidence [from the receiving state] to support the violation and the parolee is free to offer any explanation, which the Board may consider in deciding whether to revoke [] parole or impose backtime." *Id*. at 586. Thus, in affirming the Board's revocation of parole, we concluded that because the parolee signed a waiver, "which was entered into evidence without objection, listed the violations of the conditions of [] parole, and expressly stated[ that the parolee] admit[s] to violation of [their] release as stated above[] . . . . [t]his admission alone constitutes substantial evidence for the Board to make a finding that [the parolee] violated [] parole." *Id*. (internal quotation marks omitted).

---

[22] Act of December 30, 1974, P.L. 1075, *as amended*, 61 P.S. §§ 1061-1063, *repealed and replaced by*, Act 33 of 2009, P.L. 147, 61 Pa.C.S. §§ 7101-7103.

Iwanicki argues that the Board committed an *ex post facto* violation by admitting evidence of Iwanicki's convictions in Georgia at the revocation hearing. (Iwanicki's Br. at 16-17.) According to Iwanicki, this amounts to "*ex post facto* violations*" because, by "[u]tilizing the exact same arrest reports, convictions, facts, history, and evidence from [] Georgia," the Board was, in essence, "holding [p]arole proceedings for the [] Georgia Authorities, by a Pennsylvania Executive Branch Agency." (*Id*. at 16) (emphasis added). The Board responds, contending that it acted well within its authority to use out-of-state evidence because "[u]nder 37 Pa. Code § 71.5, the Board's regulations allow for the use of documentary evidence and reports, including those from other states, as long as they are deemed authentic and reliable." (Board's Br. at 19 (citing *Sanders*, 958 A.2d 582; *Fenton*, 532 A.2d 1223).) On this issue, because the Board may rely on certified copies of records and undisputed witness testimony, the Board claims that it properly "relied on testimony from parole agents, Iwanicki's acknowledgment of [the] conviction, and records confirming [the] conviction." (Board's Br. at 19-20.) Thus, according to the Board, "the Board's reliance on facts, evidence, and history from [Iwanicki's] Georgia offenses is sufficient to establish that Iwanicki committed" the parole violation. (*Id*. at 19-20 (citing *Sanchez v. Pa. Bd. of Prob. & Parole*, 616 A.2d 1097, 1101 (Pa. Cmwlth. 1992); *Chapman v. Pa. Bd. of Prob & Parole*, 484 A.2d 413 (Pa. Cmwlth. 1984)).)[23]

---

[23] Iwanicki also challenges the Board's use of documentary evidence and reports from Georgia on double jeopardy grounds. (Iwanicki's Br. at 16.) In response, the Board argues that Iwanicki's double jeopardy claim lacks merit because "it is well established that double jeopardy does not apply to parole revocation proceedings." (Board's Br. at 20 (citing *McClure v. Pa. Bd. of Prob. & Parole*, 461 A.2d 645, 647 (Pa. Cmwlth. 1983)).) Instead, the Board asserts:

Here, evidence of Iwanicki's Georgia convictions, introduced at the panel revocation hearing through a sentencing packet and new criminal conviction packet offered by Parole Agent, were properly admitted and considered by the Board. (C.R. at 53-55); *see also Sanchez,* 616 A.2d at 1101 ("[P]hotocopies of . . . convictions, taken from the criminal court docket sheets, support the [B]oard's decision."). Moreover, the Board properly relied on testimony from Parole Agent, wherein Parole Agent recounted Iwanicki's convictions in Georgia. (*Id.* at 51-54); *see also Chapman,* 484 A.2d at 416-17 (noting that the Board does not abuse its discretion where it credits a witness' testimony over the parolees' testimony). This evidence was not challenged by Iwanicki during the revocation proceedings, nor did Iwanicki offer any additional evidence beyond dispositional information. (C.R. at 57-60, 96-116.) Accordingly, we discern no error in the Board's use of documentary evidence

---

Iwanicki is not being convicted more than once for the same crime; rather, [Iwanicki] has been recommitted as a [CPV] for committing new offenses while on parole and is being denied parole for failure to demonstrate motivation for success, denial of the nature and circumstances of the offense(s) committed, refusal to accept responsibility for the offense(s) committed, and reports, evaluations, and assessments/level of risk indicates [Iwanicki's] risk to the community.

(*Id.* at 20-21.) This Court has long held that the constitutional prohibition against double jeopardy is inapplicable to parole revocation proceedings because "parole revocation proceedings before the [B]oard are administrative in nature rather than criminal[, t]hus, the constitutional protections against double jeopardy do not apply." *Epps v. Pa. Bd. of Prob. & Parole*, 565 A.2d 214, 217 (Pa. Cmwlth. 1989) (citing *Rivenbark v. Pa. Bd. of Prob. & Parole*, 501 A.2d 1110 (Pa. 1985)). That is to say that "double jeopardy is not implicated when a parole violator is returned to prison to serve [an] original sentence." *Williams v. Pa. Parole Bd.* (Pa. Cmwlth., No. 903 C.D. 2020, filed July 14, 2022) slip op. at 9 (citation omitted). Accordingly, we reject Iwanicki's double jeopardy claim.

and reports from a receiving state evidencing a transferred offender's convictions while under supervision in the receiving state.[24]

### *Untimely Second Administrative Remedies Form*

Iwanicki challenges the Board's refusal to consider his December 1, 2023 administrative remedies form, arguing that this refusal amounts to a denial of due process. (Iwanicki's Br. at 19 (citing *Pittman*, 159 A.3d 466).) The Board contends that it properly rejected Iwanicki's administrative remedies form because it was an untimely and second appeal of the Board's March 22, 2023 decision. (Board's Br. at 22.) The Board's regulations provide, in relevant part:

> A parolee, by counsel unless unrepresented, may petition for administrative review under this subsection of determinations relating to revocation decisions which are not otherwise appealable under subsection (a). Petitions for administrative review shall be received at the Board's Central Office **within 30 days** of the mailing date of the Board's determination. When a timely petition has been filed, the determination will not be deemed final for purposes of appeal to a court until the Board has mailed its response to the petition for administrative review. This subsection supersedes 1 Pa. Code § 35.226.

37 Pa. Code § 73.1(b)(1) (emphasis added). In addition, Section 73.1(b)(3) of the Board's regulations states that "[s]econd or subsequent petitions for administrative review and petitions for administrative review which are out of time under this part will not be received." 37 Pa. Code § 73.1(b)(3). "When a parolee files an administrative appeal beyond the thirty[-]day time limit, the sole issue is whether

---

[24] To the extent Iwanicki challenges the Board's decision to deny parole at the November 20, 2023 hearing, (*see* Iwanicki's Br. at 16), this Court is without jurisdiction to consider this argument because a Board decision to deny parole is discretionary and not subject to judicial review. *See Toland v. Pa. Bd. of Prob. & Parole*, 263 A.3d 1220, 1233 (Pa. Cmwlth. 2021) (holding that decisions to deny parole are "uniquely one[s] of administrative discretion and, therefore, not subject to our review") (internal quotation marks and citation omitted).

the [B]oard properly dismissed the appeal as untimely." *Flowers v. Pa. Bd. of Prob. & Parole*, 565 A.2d 185, 186 (Pa. Cmwlth. 1989) (citation omitted).

The panel issued its decision on March 22, 2023, recommitting Iwanicki for a period of 12 months for the Georgia convictions and recalculating Iwanicki's maximum term expiry for the original sentence to December 20, 2034. (C.R. at 131-32.) Iwanicki timely appealed the March 22, 2023 recommitment decision on March 31, 2023. (*Id.* at 149.) However, on December 1, 2023, Iwanicki filed a **second** administrative appeal, well beyond the 30-day deadline in the Board's regulations. (*Id.* at 159-60.) Thus, because the Board's regulations require that an appeal be filed within 30 days of the date a recommitment decision is mailed and further prohibit the Board from considering second or subsequent appeals from the same decision, the Board properly rejected Iwanicki's administrative remedies form as untimely. *See Smith v. Pa. Bd. of Prob. & Parole* (Pa. Cmwlth., No. 1663 C.D. 2017, filed Aug. 1, 2019), slip op. at 9 ("Board regulations bar consideration of second or subsequent administrative appeals and petitions for administrative review, as well as consideration of untimely administrative challenges to Board decisions.").

## III.   CONCLUSION

In sum, based on the Board's authority under the Code, and its mandatory obligations under the ICAOS, the Board did not lack jurisdiction over Iwanicki when parole supervision was transferred to Georgia, and it was proper for the Board to retake Iwanicki as a CPV because of the new felony conviction, even though that felony did not take place in Pennsylvania. In addition, the absence of a detention hearing did not invalidate the subsequent revocation hearing or recommitment decisions. Finally, the Board was permitted to use documentary evidence and

reports from Iwanicki's Georgia convictions as evidence in the revocation hearing and subsequent hearing denying parole, and it was proper for the Board to reject Iwanicki's administrative remedies form as untimely. Accordingly, we discern no error in the Board's decision to affirm Iwanicki's recommitment as a CPV and, therefore, we affirm.

_____
RENÉE COHN JUBELIRER, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Christopher Iwanicki,                             :
                            Petitioner            :
                                                  :
            v.                                    :    No. 97 C.D. 2024
                                                  :
Pennsylvania Parole Board,                        :
                            Respondent            :

# **O R D E R**

**NOW**, June 4, 2025, the January 9, 2024 Order of the Pennsylvania Parole Board is **AFFIRMED**.

_____
RENÉE COHN JUBELIRER, President Judge